(No. 61772.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. VICTOR SALDIVAR, Appellant.

*Opinion filed September 17, 1986.*

Robert J. Agostinelli, Deputy Defender, and Frank W. Ralph and Judith Z. Kelly, Assistant Defenders, of the Office of the State Appellate Defender, of Ottawa, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Scott Graham, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

The defendant, Victor Saldivar, was charged by criminal information in the circuit court of Rock Island County with the murder of Terrence Hunt. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(2).) Following a bench trial on stipulated facts, the defendant was found guilty of voluntary manslaughter. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—2(a)(1), (b).) The circuit court sentenced the

defendant to a seven-year term of imprisonment with a mandatory supervised release term of two years (Ill. Rev. Stat. 1983, ch. 38, pars. 9—2(c), 1005—8—1(a)(4)). The appellate court affirmed the defendant's conviction and sentence in a Rule 23 order (87 Ill. 2d R. 23; 130 Ill. App. 3d 1163). We allowed the defendant's petition for leave to appeal (94 Ill. 2d R. 315(a)).

The defendant raises two issues on appeal in this court. The first issue is whether the circuit court erred in considering as a statutory aggravating sentencing factor that the defendant's conduct caused serious harm to the victim. The second issue, which is not dependent on the disposition of the first, is whether, in light of the substantial mitigating evidence presented, the circuit court abused its discretion in sentencing the defendant to a seven-year term of imprisonment.

The record discloses that the prosecution and defense counsel stipulated to what certain witnesses would testify if they were present in court. It was stipulated that if a deputy sheriff from the Rock Island County sheriff's department were called, he would testify that the body of the victim, Terrence Hunt, was found in a trailer home in Woodland Trailer Park, Rock Island County, on October 17, 1983; that if the pathologist from Rock Island County were present, he would testify that the victim was fatally stabbed twice in the chest; and that if the chief investigator from the Rock Island County sheriff's department were called, he would testify that an investigation followed which led to the arrest of the defendant. It was further stipulated that the defendant gave an oral statement to law officers from the Rock Island County sheriff's department admitting his involvement in the homicide. According to the prosecutor, the State would also have corroborated the defendant's confession with the testimony of acquaintances of the defendant. They would testify to conversations with the

defendant after the crime wherein the defendant stated that he accompanied the victim to the victim's trailer home; that the victim had represented to him that a party was taking place at the trailer; that no one was in the trailer when they arrived; that the victim made a homosexual advance; that he refused; that a struggle ensued; and that he stabbed the victim with a kitchen knife. It was also stipulated that homosexual paraphernalia was found in the victim's trailer.

After hearing the stipulated evidence and affording the defendant the opportunity to make a statement in his own behalf, the circuit court found the defendant guilty of the lesser included offense of voluntary manslaughter (Ill. Rev. Stat. 1983, ch. 38, pars. 9—2(a)(1), (b)). Following the defendant's conviction, a sentencing hearing was held on May 11, 1984. A written presentence report of investigation (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—3—1, 1005—3—2) was submitted at the hearing and considered by the trial judge. A handwritten statement by the defendant directed to the trial judge was also appended to the presentence report. At the sentencing hearing, evidence in mitigation of the offense was presented and considered by the court. No evidence was offered in aggravation.

At the time of the presentence report, the defendant was 35 years of age, married, and the father of a three-year-old son and a six-year-old daughter. The report indicated that the defendant enlisted in the United States Marines in January 1967, and was discharged honorably in January 1970. He subsequently reenlisted for a second term and was discharged under conditions other than honorable in 1975. During his term in the Marines, the defendant spent almost four years in Vietnam and received a foreign-combat-action ribbon. The defendant also obtained a high school equivalency certificate (GED) while in the Marines.

Following his discharge from military service, the defendant was employed by Mercy Hospital in Davenport, Iowa, by a Long John Silvers restaurant in Bettendorf, Iowa, by Turnstyle Discount Stores in Omaha, Nebraska, and by Taco Bell Restaurants also in Omaha. For almost five years prior to the sentencing hearing, the defendant was employed by the John Deere Company as a material coordinator in the production line. The defendant had no prior history of delinquency or criminal activity. The report stated that the defendant had been under psychiatric treatment for post-traumatic stress syndrome resulting from his Vietnam experience. In addition, the defendant suffered from diabetes and had been hospitalized on one occasion for acute alcoholism. The report also contained information pertaining to the defendant's religious preference, economic status, and family situation and background. The report concluded with information about special resources within the defendant's community available to assist the defendant's rehabilitation.

In the letter presented to the trial judge, the defendant stated that he did not desire a sentence of imprisonment. He indicated his desire to care for the future needs of his children, especially noting his daughter's need for his emotional and physical support. He stated that he wished to continue his employment with John Deere, which would be terminated if he was sent to prison. He ended this letter with a plea to be sentenced to a period of probation.

The defendant called three witnesses at the sentencing hearing. Marie Saldivar, his mother, testified that her husband was a diabetic, that he had lost much of his sight and his hearing, and that he had a kidney removed due to cancer. She testified that the defendant provided her and her husband with both monetary and moral support and that the defendant was a very good father. She

stated her concern for her son if he was imprisoned and her concern for her grandchildren. She also stated that the defendant was a very religious man who, in the ninth grade, had wanted to become a Marist priest.

The defendant's wife, Carol Ann Saldivar, testified that the defendant was deeply devoted to his children. She stated that during her separation from the defendant, the defendant's daughter had to undergo psychiatric counseling. She further testified that the defendant was the family's sole means of financial support and, since his incarceration, the family was seeking Aid to Dependent Children (AFDC benefits). She also claimed that if the defendant was placed on probation, the family would be able once again to function as a household unit. She admitted on cross-examination, however, that the defendant was involved with a veterans group and thus spent a great deal of time away from the home.

Lieutenant Mike Grchan of the Rock Island County sheriff's department was the final witness called by the defendant. He testified that explicit pornographic magazines and sexual paraphernalia were found in the victim's trailer. On cross-examination, however, Grchan testified that the items were found in a storage room in the trailer. Grchan also testified on cross-examination that the inside of the trailer did not appear as if there had been a physical struggle.

Finally, the defendant testified in his own behalf. He testified about his relationship with his family, his diabetes which required daily insulin injections, and his occasional abuse of alcohol. The defendant further testified about his record in the Marines, offering explanations for his less than honorable discharge.

The trial judge, in determining the sentence to be imposed, considered what he believed to be the relevant statutory factors. In mitigation, the trial judge found that the defendant acted under a strong provocation;

that the defendant's criminal conduct was the result of circumstances unlikely to recur; that the character and attitudes of the defendant indicated that he was unlikely to commit another crime; and that the defendant was particularly likely to comply with the terms of a period of probation. (Ill. Rev. Stat. 1983, ch. 38, pars. 1005—5—3.1(a)(3), (a)(8), (a)(9), (a)(10).) The trial judge, however, found as the primary statutory factor in aggravation "the terrible harm that was caused to the victim." (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(a)(1).) The trial judge also mentioned that the defendant's conduct caused death and that a human life was taken. The trial judge further emphasized that the defendant's behavior caused him to be in the situation which developed. Finding probation to be an inappropriate alternative, the court sentenced the defendant to a term of seven years' imprisonment with a two-year term of mandatory supervised release.

On appeal, the defendant contended that the circuit court improperly considered as a statutory factor in aggravation that his conduct caused serious harm to the victim. The defendant argued, pursuant to *People v. Conover* (1981), 84 Ill. 2d 400, that since the threat or causation of serious harm is implicit in the offense of voluntary manslaughter, the trial judge improperly considered this factor. The defendant also contended that, in light of the tremendous amount of evidence presented in mitigation and the paucity of aggravating circumstances, the circuit court abused its discretion in sentencing the defendant to a seven-year term of imprisonment. The appellate court concluded, however, that the sentence was not excessive in view of the fact that the defendant stabbed the victim. The appellate court further concluded that the circuit court properly considered the victim's death as a statutory aggravating factor.

Section 5—5—3.2 of the Unified Code of Corrections

(Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2) lists the various factors in aggravation that may be utilized by the sentencing judge. That section provides in pertinent part:

> "(a) The following factors shall be accorded weight in favor of imposing a term of imprisonment or may be considered by the court as reasons to impose a more severe sentence under Section 5—8—1 [Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1]:
>> (1) the defendant's conduct caused or threatened serious harm;" (Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2(a)(1)).

The penalty for voluntary manslaughter, a Class 1 felony, is a determinate sentence of not less than 4 years' and not more than 15 years' imprisonment. (Ill. Rev. Stat. 1983, ch. 38, pars. 9—2(c), 1005—8—1(a)(4).) Thus, in the present case, the defendant received a sentence of 3 years in excess of the minimum penalty.

The defendant contends in this court that his sentence is excessive because a material element of the offense was the primary aggravating factor on which the circuit court relied in imposing sentence. The circuit court considered as a statutory aggravating factor in sentencing that the defendant's conduct caused serious harm to another. By definition, "[a] person commits voluntary manslaughter if he kills an individual without lawful justification under a sudden and intense passion resulting from serious provocation, or if he intentionally and knowingly kills an individual believing the circumstances justify or exonerate the killing, but his belief is unreasonable." (*People v. Fausz* (1983), 95 Ill. 2d 535, 539; Ill. Rev. Stat. 1983, ch. 38, par. 9—2(a)(b).) The defendant argues that implicit in the offense of voluntary manslaughter is the causation or threat of serious physical harm, *i.e.*, death resulting from the defendant's conduct. The defendant assumes that in establishing the

appropriate range of penalties to be imposed for voluntary manslaughter, the legislature must have taken into account the fact that the offense involved such serious physical harm or threat of physical harm to the victim. Therefore, that factor cannot be utilized again by the sentencing judge in aggravation to justify imposition of a more severe sentence than might otherwise be imposed.

The State, in response, initially argues that the defendant waived the issue on review by his failure either to object at sentencing or to raise the alleged error in a written post-sentencing motion. The State further argues that even if the issue was not waived, the sentencing judge properly considered the degree of harm suffered by the victim.

We do not believe this is a proper case for the application of the waiver rule. In the argument of counsel at the close of the sentencing hearing and before the pronouncement of sentence, the prosecutor had emphasized that the defendant had killed the victim. Defense counsel then agreed with the prosecutor that the fact there was a homicide is not enough to warrant incarceration and argued: "By definition voluntary manslaughter involves a homicide. There is going to be a death." After a brief discussion of the homicide as an aggravating factor, defense counsel then discussed the mitigating factors. After the argument in aggravation and mitigation, the court made its ruling during which the court made the statements now complained of. To preserve any error of the court made at that time, it was not necessary for counsel to interrupt the judge and point out that he was considering wrong factors in aggravation, especially in light of the argument that had preceded the ruling.

The defendant relies on the reasoning expressed by this court in *People v. Conover* (1981), 84 Ill. 2d 400, to support his position. In *Conover*, two cases were consolidated for appeal. In the first case, the defendant was

convicted of burglary and sentenced to a six-year term of imprisonment. In the second, the defendant was convicted of felony theft and sentenced to a five-year term of imprisonment. The six-year sentence was one year less than the maximum, while the five-year prison sentence was the maximum. In each case, the sentencing judge applied the statutory aggravating factor, the defendant's receipt of compensation for committing the offense, to impose a more severe sentence under section 5—8—1 (Ill. Rev. Stat. 1979, ch. 38, pars. 1005—8—1(a)(5), (a)(6)) because the defendant had retained the proceeds of the crime he committed. On review in this court, the defendants contended that the statutory language referred to crimes that an offender had been hired to commit and not to the fact that the defendant had retained the proceeds of his crime. The defendants argued that if receipt of proceeds constituted a factor in aggravation, then in most burglaries and in every theft a greater penalty than that intended by the specific statutes could be imposed. Relying on *People v. Brownell* (1980), 79 Ill. 2d 508, this court concluded that "a factor implicit in most burglaries and every theft should not be used as an aggravating factor at sentencing." (*People v. Conover* (1981), 84 Ill. 2d 400, 404.) In reaching its conclusion, this court reasoned:

> "The legislature has established the range of penalties to be imposed in burglary (Ill. Rev. Stat. 1979, ch. 38, par. 19—1) and in theft (Ill. Rev. Stat. 1979, ch. 38, par. 16—1) in those specific sections. Inasmuch as most burglaries and every theft involve proceeds, it is reasonable to conclude that the legislature already considered that factor in establishing the penalties. If the General Assembly had intended that proceeds be utilized again to impose a more severe penalty for those offenses, such intent would be more clearly expressed. Consequently, we believe receiving compensation for committing the offense under the statute applies only to a defendant who

receives remuneration, other than proceeds from the offense itself, to commit a crime. It is reasonable to conclude that, just as it did in allowing the death sentence for one who is hired to commit murder, the legislature intended to impose a harsher sentence on one who is paid to commit a burglary or theft than on one who commits it on his own volition." (84 Ill. 2d 400, 404-05.)

Because one defendant received the maximum and one defendant only one year less than the maximum permissible sentence, the *Conover* court was unable to determine the weight the circuit court accorded the defendant's taking of proceeds as an aggravating factor in sentencing and therefore remanded both cases for reconsideration of the sentences.

Although *Conover* stands for the proposition on which the defendant relies, this court did not intend a rigid application of the rule, thereby restricting the function of a sentencing judge by forcing him to ignore factors relevant to the imposition of sentence. The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, sec. 11.) A reasoned judgment as to the proper penalty to be imposed must therefore be based upon the particular circumstances of each individual case. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154; *People v. Bolyard* (1975), 61 Ill. 2d 583, 589; *People v. Martin* (1983), 112 Ill. App. 3d 486, 502.) Such a judgment depends upon many *relevant* factors, including the defendant's demeanor, habits, age, mentality, credibility, general moral character, and social environment (*People v. Stewart* (1984), 104 Ill. 2d 463, 492; *People v. Dukett* (1974), 56 Ill. 2d 432, 452; *People v. Requena* (1982), 105 Ill. App. 3d 831, 838), as well as " 'the nature and circumstances of the offense, including the nature and extent of each element of the offense as com-

mitted by the defendant' " (*People v. Hunter* (1981), 101 Ill. App. 3d 692, 694; *People v. Tolliver* (1981), 98 Ill. App. 3d 116, 117-18).

Sound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed. Certain criminal conduct may warrant a harsher penalty than other conduct, even though both are technically punishable under the same statute. Likewise, the commission of any offense, regardless of whether the offense itself deals with harm, can have varying degrees of harm or threatened harm. The legislature clearly and unequivocally intended that this varying quantum of harm may constitute an aggravating factor. While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted. People v. Lampton* (1982), 108 Ill. App. 3d 41, 47; *People v. Bone* (1982), 103 Ill. App. 3d 1066, 1070; *People v. Childs* (1981), 101 Ill. App. 3d 374, 379; *People v. Hert* (1981), 95 Ill. App. 3d 871, 874; see also Hartmann, *Factors in Aggravation and Mitigation: A Trap for the Sentencing Judge?,* 33 DePaul L. Rev. 357, 364-67 (1984).

Citing *People v. Andrews* (1982), 105 Ill. App. 3d 1109, and *People v. Hughes* (1982), 109 Ill. App. 3d 352, the State maintains that, in assessing the "degree of harm" caused to the victim of a manslaughter, it is not impermissible for the sentencing court to consider the force employed and the physical manner in which the victim's death was brought about. In *Andrews*, the defendant was found guilty of the murder of a 16-month-old boy and sentenced to 60 years' imprisonment. The

pathologist who performed the autopsy found numerous neck injuries including severe bruises, broken bones, and enough blood in the airways to have caused death by asphyxia. The windpipe was also crushed. In the pathologist's opinion, the victim's injuries were inflicted by a "significant amount of force," the cause of death being strangulation. At sentencing, the trial court considered, as an aggravating factor in imposing sentencing, that the defendant caused "serious bodily injury." On appeal, the defendant argued that the trial court erroneously considered such aggravating factor, since infliction of bodily harm is implicit in every murder and that the legislature had provided what it considered the appropriate punishment for murder. In rejecting the defendant's argument, the appellant court concluded "that in a conviction for murder it is not impermissible for the sentencing court to consider the force employed and the physical manner in which the victim's death was brought about." (*People v. Andrews* (1982), 105 Ill. App. 3d 1109, 1113.) In reaching its conclusion, the appellate court reasoned:

> "In this regard, although the consequences are identical, a defendant who tortures his victim to death should expect to receive a more severe punishment than a defendant who did not physically participate in terminating the victim's life but who is guilty of murder on the theory of accountability." 105 Ill. App. 3d 1109, 1113.

Similarly, in *Hughes*, the defendant was found guilty of the offense of murder and sentenced to 24 years' imprisonment. The evidence adduced at trial established that the defendant and three youths entered a tavern in Centralia, attempting to purchase a six-pack of beer. The bartender refused to serve the youths due to insufficient identification. After the bartender refused to serve the youths, they became angry. As they were leaving the tavern they swore at a patron, prompting other patrons to run out after the youths. While the youths were run-

ning along an alley, the defendant turned and fired a number of shots. The victim was found lying on the sidewalk, a bullet hole in his shirt with blood around it. In sentencing the defendant, the trial court considered, as a factor in aggravation, that his conduct caused or threatened serious bodily harm to the victim. On appeal, the defendant argued that the trial court improperly considered such aggravating factor because it is necessarily present in every murder. Relying on *Andrews*, the appellate court rejected the defendant's argument. The appellate court placed considerable weight on the fact that the trial court noted that the defendant carried a gun, took deliberate aim at the victim, and fired two shots. The appellate court reasoned that these considerations lent support to the trial court's conclusion that the defendant intentionally caused or threatened serious harm to the victim.

Following the reasoning expressed in *Andrews* and *Hughes*, we hold that in sentencing a defendant on a conviction for voluntary manslaughter it is permissible for the trial court, in applying the statutory aggravating factor that the defendant's conduct caused serious harm to the victim, to consider the force employed and the physical manner in which the victim's death was brought about.

Applying the above principle to the present case, we find that the sentencing judge improperly relied upon the aggravating factor that the defendant's conduct caused serious harm to the victim to impose a sentence more severe than would have been imposed if the impermissible factor had not been considered. Here, unlike in *Hughes* and *Andrews*, the circuit court's finding in aggravation was not directed at the degree or gravity of the defendant's conduct, *i.e.*, the force employed and the physical manner in which the victim's death was brought about or the nature and circumstances of the offense, in-

cluding the nature and extent of each element of the offense as committed by the defendant. Rather, the record demonstrates that the circuit court focused primarily on the end result of the defendant's conduct, *i.e.*, the death of the victim, a factor which is implicit in the offense of voluntary manslaughter and which, under this court's reasoning in *People v. Conover* (1981), 84 Ill. 2d 400, 404, cannot be considered in aggravation.

Unlike *Conover*, however, we find it unnecessary to remand this case to the circuit court. In considering the factors in aggravation, the circuit court in the present case referred to the death of the victim in the following manner: "The number one factor in aggravation—there are some that come to a lesser degree, but the one that is probably the most serious is the terrible harm that was caused to the victim. And the victim is dead today." This, in essence, was the aggravating factor relied on by the court in fixing the sentence. Most of the remainder of the court's comments concerned mitigating factors. The circuit court therefore erred in imposing a sentence in excess of the minimum statutory period of imprisonment based on the aggravating factor of the victim's death. In the exercise of our authority under Supreme Court Rule 615(b)(4) (87 Ill. 2d R. 615(b)(4)), we reduce the defendant's sentence to four years, the minimum period of incarceration provided for the offense of voluntary manslaughter, a Class 1 felony (Ill. Rev. Stat. 1983, ch. 38, par. 9—2(c); Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(4)). The record indicates the defendant was arrested on October 21, 1983. The conviction is affirmed, and the mandate herein shall issue forthwith so that a determination may be made at an early date whether or not the defendant is entitled to immediate release from incarceration.

*Conviction affirmed;*
*sentence modified;*
*mandate to issue forthwith.*