THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GILBERTO JUAREZ, Defendant-Appellant.

First District (3rd Division)   No. 1—94—3802

Opinion filed February 28, 1996.

Rita A. Fry, Public Defender, of Chicago (Pamela Stewart, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Susan R. Schierl, and Elizabeth A. Vitell, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:
Defendant was charged with an aggravated discharge of a firearm

(720 ILCS 5/24—1.2(a)(2) (West 1994)). After a bench trial, defendant was convicted and sentenced to 14 years' imprisonment. It is from this judgment of conviction that defendant now appeals to this court pursuant to Supreme Court Rule 603 (134 Ill. 2d R. 603).

For the reasons which follow, we affirm the judgment of the circuit court as modified.

## FACTUAL BACKGROUND

The following pertinent facts were adduced at trial. On April 15, 1994, around 3 a.m., six people were riding in a car down West 17th Street in Chicago, Illinois. Lynn Gutierrez and Charrissa Leonard, two witnesses, were passengers in the back seat of the car driven by Nicholas Rouley. While driving in the vicinity of 1137 West 17th Street, Gutierrez and Leonard observed a group of people standing in front of Leonard's house "throwing up gang signs" and shouting gang slogans. They continued driving down the street, but stopped when they saw a police officer at the corner of 18th Street and Racine Street. The six occupants of the car then told Officer Roberto Vargas and his partner, Officer Joe Panos, about the group of people they had seen making gang signals. Although initially incredulous, Vargas eventually agreed to follow them in his squad car to 1136 West 17th Street.

As the two cars approached the area, Leonard testified that the group of people had dispersed upon seeing the police squad car. Leonard and Gutierrez both testified that while Rouley continued driving down the street, defendant came out from between two parked cars, pointed a gun and shot at them. Although Leonard stated that she did not get a close look at defendant, she was able to give a description of defendant based on his clothing. Leonard recalled that after the shooting, she saw defendant begin to flee. The other witness, Gutierrez, recounted with some inconsistencies that she saw defendant's face and the gun in his hand when he began shooting, but then immediately ducked and stayed down until the car reached the middle of the block. Gutierrez did not see defendant again until he was in police custody.

Next, Vargas testified that he first heard two shots being fired. Vargas further testified that he clearly saw defendant emerge from parked cars 10 feet away from him, point a gun and fire four more times in the direction of Rouley's car. Vargas saw the muzzle flash from defendant's hand. Vargas recalled that the street was illuminated by artificial lighting and that no one else was in the immediate area around defendant. In order to cut off defendant's escape route, Vargas pulled up next to the parked cars, near the location he

had seen defendant. As a result, defendant ran into the squad car, injuring himself. Defendant was subsequently arrested. Although a gun was recovered from the ground, fingerprints were not lifted from it. Vargas also mentioned at trial that he had examined the victim's car and noticed a bullet hole in the left front quarter panel.

At trial, defendant took the stand on his own behalf. He stated that on the night in question, he went out to his car to retrieve a suede shoe cleaner. Defendant testified that as he passed an alley, he saw a car coming, with its passengers flashing gang signals and shooting. He further testified that he also observed a group of people nearby. Some of the people chased the car while others ran away. Defendant recalled that he ducked in order to avoid the cross fire. Defendant further recalled that he tried to get the license plate number of the car, but his view was blocked by an unidentified man shooting at the car. He recounted that as he attempted to cross the street, a police car hit him from behind, knocking him over. The police arrested him, even though he did not have a weapon on him.

On cross-examination, defendant said that he did not make a confession to Detective Meyer. He stated that he did not admit pulling a gun from his waist and firing six shots, while yelling "PPK," which is the abbreviation for the "Party People Killer" gang. Defendant has a tattoo of a bunny on his leg, which is known to be a symbol for the Party People Killer gang. He denied ever belonging to the Party People gang or that the tattoo signified any affiliation to the gang. Rather, defendant stated that when he got the tattoo 14 years ago, he intended it to resemble the Playboy bunny. After defendant's testimony, the State proffered a certified copy of defendant's prior conviction for possession of a controlled substance. On rebuttal, the State recalled Vargas, who testified that defendant admitted his affiliation with the Party People Killer gang.

For the record, the defense stated that, before trial, he had requested permission to issue a subpoena for Rouley, which the court refused. The trial court's reasoning was that no subpoenas had been issued from the time the trial date was set, July 19, 1994, to the actual trial date, August 8, 1994. Defense counsel told the trial court he had expected that the State would subpoena Rouley.

The trial court denied defendant's motion for a new trial and proceeded to conduct a sentencing hearing. After a bench trial, defendant was convicted and sentenced to 14 years' imprisonment for aggravated discharge of a firearm. Defendant now appeals.

## ISSUES PRESENTED FOR REVIEW
On appeal, defendant argues that: (1) defense counsel's failure to

subpoena a material witness amounted to a denial of defendant's right to effective assistance of counsel; (2) the prosecution failed to perfect its impeachment of defendant; (3) defendant was not proven guilty of an aggravated discharge of a firearm beyond a reasonable doubt; and (4) the trial court abused its discretion in sentencing.

## OPINION

We first turn to defendant's contention that he received ineffective assistance of counsel, thus being denied his constitutional rights. Specifically, defendant asserts that his counsel was ineffective as a result of his failure to subpoena a material witness, Rouley, that would have exonerated him. Trial counsel not only knew the identity of this witness, but also knew what he would testify to.

An accused has the right to effective assistance of counsel in State criminal proceedings pursuant to the sixth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VI, XIV; *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792; *People v. Knippenberg* (1977), 66 Ill. 2d 276, 362 N.E.2d 681), as well as by section 8 of article I of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 8). The Illinois Supreme Court in *People v. Albanese* (1988), 125 Ill. 2d 100, 531 N.E.2d 17, adopted the standard set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, for determining whether a criminal defendant was denied effective assistance of counsel. The court in *Albanese* summarized the *Strickland* standard as follows:

> "*Strickland* advances a two-component standard. The first component is to prove that counsel's representation fell below an objective standard of reasonableness such that the trial results were unreliable. Under the second component, the defendant must prove that he was prejudiced by the unprofessional conduct; that is, he must show, but for the attorney's unprofessional errors, the results of the trial would have been different." *Albanese*, 125 Ill. 2d at 106, citing *Strickland*, 466 U.S. at 687, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068.

In determining whether counsel's representation fell below an objective standard of reasonableness, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) In making this assessment, "[j]udicial scrutiny must be highly deferential," and a court must resist the temptation to second-guess counsel's actions and avoid the distorting effects of hindsight. (*Strickland*, 466 U.S. at 694-95, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) It must be remembered that effective assistance means

competent, not perfect, representation. *People v. Berry* (1994), 264 Ill. App. 3d 773, 782, 642 N.E.2d 1307.

"Decisions on whether to call witnesses are usually matters of strategy." (*People v. Krankel* (1985), 131 Ill. App. 3d 887, 892, 476 N.E.2d 777.) Errors in strategy do not constitute ineffective assistance of counsel. (*Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.) However, failure to interview witnesses may indicate actual incompetency, especially where their testimony may be exonerating. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203; *People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3; *People v. Corder* (1982), 103 Ill. App. 3d 434, 431 N.E.2d 701.) Whether a failure to investigate is incompetence depends upon the value of the evidence and the closeness of the case. *People v. Dillard* (1990), 204 Ill. App. 3d 7, 561 N.E.2d 1219.

■ After careful review of the record, we find that trial counsel's representation did not fall below an objective standard of reasonableness such that the trial results were unreliable. Trial counsel knew the identity of the material witness, Rouley, who had been the driver and the victim in this case. Trial counsel had thoroughly and independently investigated Rouley, and even obtained a statement from him, which declared that defendant was not the same man Rouley saw shooting in the direction of his car on the night of April 15, 1994. We believe that this statement gave trial counsel a clear indication as to what Rouley would testify to. The statement may have exonerated defendant or, in the very least, corroborated defendant's testimony. The statement was taken on June 4, 1994, trial was set on July 19, 1994, and began on August 8, 1994. At no point before August 8, 1994, did trial counsel subpoena Rouley. This leads us to believe that trial counsel's decision not to subpoena Rouley was a trial tactic. Trial counsel may have feared that Rouley would change his testimony at trial. We decline to second-guess counsel's actions. Effective assistance means competent, not perfect, representation. Therefore, since the first part of the *Strickland* test was not met, we need not address the second part. We conclude that trial counsel's performance did not fall below the objective standard of reasonableness. Accordingly, we find that trial counsel did not provide ineffective assistance.

■ Defendant's second contention is that he was denied a fair trial when the prosecutor attempted to impeach him without perfecting the impeachment. Defendant posits that when the prosecutor questioned defendant about his alleged confession to Meyer, the prosecutor should have called him to the stand in order to perfect the impeachment or offer proof to support the insinuation. Thus, defen-

dant states that he was denied due process and a fair trial as a result of the prosecutor's prejudicial tactics.

We do not consider the merits of this issue because the issue is waived. Our supreme court has held that both a trial objection and a written post-trial motion raising the issue are required to preserve that issue for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) Defendant failed to preserve the issue since defendant's claim that the prosecutor's cross-examination was "unperfected impeachment" is actually made for the first time on appeal. (See *People v. Page* (1993), 156 Ill. 2d 258, 620 N.E.2d 339.) Moreover, we find that no evidence exists to bring this alleged error within the ambit of Supreme Court Rule 615 (134 Ill. 2d R. 615), which is the plain error exception to the waiver rule. (See *People v. Pasch* (1992), 152 Ill. 2d 133, 186, 604 N.E.2d 294 (issue of prosecutorial failure to perfect impeachment of a witness was waived and such waiver was not a denial of a fair trial).) Accordingly, we conclude that defendant failed to preserve this issue for review.

Still to be considered is defendant's contention that he was not proven guilty beyond a reasonable doubt, since the testimonies of the State's eyewitnesses were confusing and contradictory. Specifically, defendant argues that Gutierrez's testimony is unreliable because she had testified to the fact that defendant was standing between two parked cars while shooting, only to later state that he had come out onto the street and fired. Furthermore, Gutierrez recalled that she did not see the face of defendant, but later stated that she did see defendant's face as he fired the first shot. In addition, defendant claims that Vargas embellished his testimony at trial. Defendant submits that his conviction should be set aside as these contradictory and embellished testimonies raise a reasonable doubt as to his guilt.

The standard of review on a challenge to the sufficiency of the evidence in a criminal case is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267; *People v. Sutherland* (1992), 155 Ill. 2d 1, 17, 610 N.E.2d 1; *People v. Torres* (1995), 269 Ill. App. 3d 339, 346, 645 N.E.2d 1018.) A reviewing court should apply this standard regardless of whether the evidence is direct or circumstantial and should not substitute its judgment for that of the finder of fact on questions involving the weight of the evidence or the credibility of the witnesses. (*Sutherland*, 155 Ill. 2d at 17.) A criminal conviction will not be set aside on review unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of a defendant's guilt. *People v. Byron* (1995), 164 Ill. 2d 279, 647 N.E.2d 946.

■ Applying the foregoing principles to the case at bar, we believe that defendant's contention must fail. Our review of the record reveals that a rational trier of fact could have found the witnesses' testimonies sufficient to prove defendant's guilt beyond a reasonable doubt. We note that there were *three* eyewitnesses here: Gutierrez, Leonard, and Vargas. Gutierrez and Leonard were passengers in the car. Gutierrez testified that she saw defendant point and shoot at the car. Leonard testified that she did not see defendant's face, but saw his clothes, and identified him in that way. Vargas witnessed defendant point the gun and shoot in the direction of a moving vehicle, knowing that the vehicle was occupied. It is within the province of the trier of fact to determine the weight and credibility of each witness' testimony. (*People v. Medeiros* (1993), 249 Ill. App. 3d 139, 618 N.E.2d 1065.) The trial judge, in this instance, found the testimonies of the witnesses credible.

In addition, the trial judge found the officer's testimony significant, since he was a law enforcement agent as well as an occurrence witness. We are not pronouncing that an officer's testimony should be automatically given great weight. Rather, we believe that the trier of fact has the right to find an officer's testimony significant. We shall not reverse a conviction where there were three eyewitnesses to the crime, two of whom clearly saw defendant point and shoot in the direction of the moving car. After hearing all the testimony and evidence before it, we conclude that the trial court found defendant guilty beyond a reasonable doubt. Accordingly, we affirm defendant's conviction.

■ Finally, defendant advances that the trial court abused its discretion by imposing a 14-year sentence. Defendant asserts that his sentence was excessive because at the time of sentencing he had no prior significant criminal record or convictions for violent crimes, he was successfully employed as an artist, none of the occupants of the car suffered any physical injury, and he has good rehabilitative potential. We agree.

Our State constitution mandates that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, § 11.) "Where the sentence chosen by the trial court is within the statutory range permissible for the pertinent criminal offense for which the defendant has been tried and charged, a reviewing court has the power to disturb the sentence only if the trial court abused its discretion in the sentence it imposed." (*People v. Jones* (1995), 168 Ill. 2d 367, 373-74; see also *People v. Hicks* (1984), 101 Ill. 2d 366, 375, 462 N.E.2d 473; *People v. Godinez* (1982), 91 Ill.

2d 47, 54, 55, 434 N.E.2d 1121; *People v. Cox* (1980), 82 Ill. 2d 268, 275, 412 N.E.2d 541; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) The trial court is entitled to great deference and weight in sentencing (*People v. Streit* (1991), 142 Ill. 2d 13, 18, 566 N.E.2d 1351), and the appellate court may not substitute its judgment merely because it would have balanced the appropriate factors differently. (*People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.) An abuse of discretion can be found in a sentence that is within the statutory limitations if that sentence is greatly at variance with the purpose and spirit of the law (*People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606), as well as if the sentence was based on improper considerations or is otherwise erroneous. *People v. Conley* (1983), 118 Ill. App. 3d 122, 133, 454 N.E.2d 1107.

Nonetheless, a trial court's discretion in imposing a sentence is not totally unbridled. Pursuant to Supreme Court Rule 615(b)(4), this court is empowered to reduce sentences. (134 Ill. 2d R. 615(b)(4).) Depending upon all of the surrounding circumstances, the appellate court may choose between imposing a new sentence or remanding the matter for resentencing by the trial court. (*Jones*, 168 Ill. 2d at 377.) It may be appropriate for the appellate court to impose sentence rather than exhaust the additional judicial resources that would be expended by ordering a new sentencing hearing. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138.) A reviewing court's power to reduce a sentence should be exercised cautiously and sparingly. *People v. O'Neal* (1988), 125 Ill. 2d 291, 300, 531 N.E.2d 366.

In the case *sub judice*, defendant was convicted of an aggravated discharge of a firearm, which is a Class 1 felony. (720 ILCS 5/24—1.2(a) (West 1994).) The determinate sentence shall be not less than 4 years and not more than 15 years. (730 ILCS 5/5—8—1(a)(4) (West 1992).) Defendant was sentenced to 14 years' imprisonment, one year less than the maximum sentence for this crime.

Section 5—4—1(c) of the Unified Code of Corrections (730 ILCS 5/5—4—1(c) (West 1994)) provides, in pertinent part, that "[i]n imposing a sentence for a violent crime *** the trial judge shall specify on the record the particular evidence, information, factors in mitigation and aggravation or other reasons that led to his sentencing determination." In the present case, the trial judge did not specify on the record the factors leading to his imposition of a 14-year term. Rather, the trial judge merely concluded:

> "I've given the defendant an opportunity to make a statement in his own behalf. He has made a short statement, I have considered the statement. I have read the Presentence Investigation Report. I have looked at my notes with regard to the trial and taking all

into consideration a finding of guilty as to the Class One felony charge of aggravated discharge of a firearm, it is the order of this court that you be sentenced to fourteen years in the Illinois Department of Corrections."

None of the mitigating or aggravating factors are specifically stated as required by law when sentencing a defendant for a violent crime. Nor does the record indicate that the trial judge gave serious consideration to evidence in mitigation or rehabilitative potential. The trial judge does not point to any particular evidence or information that led to his sentencing decision. He merely states that he looked at his notes and read the presentence investigation report.

Defendant's rehabilitative potential was given inadequate consideration by the trial court. At the time of sentencing, defendant was 31 years old, had been successfully self-employed as an artist since 1985, contributing to the aesthetics of society. He has a reputation in the community as a gifted artist, creating murals around the city. His income came from painting murals, creating banners for Budweiser beer, making signs for business entities and air brushing for t-shirts. Defendant also participated in various art exhibits. Defendant is also a father of an eight-year-old daughter, with whom he is very close. Prior to this offense, defendant did not have a significant criminal background.

While the crime defendant committed was reprehensible, the fact remains that none of the occupants of the car were injured. Although defendant was properly tried and convicted, the trial court abused its discretion in not taking all the factors into consideration and not specifying on the record the basis on which it imposed a sentence disproportionate to the crime committed. Accordingly, in light of all the foregoing factors, we reduce defendant's sentence to a term of six years' imprisonment.

For the reasons stated, the judgment of the circuit court is affirmed as modified to impose a sentence of six years' imprisonment for defendant's aggravated discharge of a firearm conviction.

Affirmed as modified.

RIZZI, P.J., and CERDA, J., concur.