2020 IL App (1st) 170586-U

No. 1-17-0586

June 30, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 5525 |
| | ) | |
| LORENZO PHILLIPS, | ) | Honorable |
| | ) | Nicholas R. Ford, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   Defendant's sentence is vacated; the trial court abused its discretion in sentencing defendant who seven years earlier at the age of 17 committed two armed robberies and two unarmed robberies, to the maximum extended-term sentence permitted under law for an unarmed robbery; in the exercise of our authority pursuant to Illinois Supreme Court Rule 615(b)(4), defendant's sentence of imprisonment is reduced to 12 years.

¶ 2    Following a bench trial, defendant, Lorenzo Phillips, was convicted of robbery (720 ILCS 5/18-1(a) (West 2014)) and sentenced to an extended term of 14 years' imprisonment. On appeal,

defendant contends the trial court abused its discretion in sentencing him to the maximum allowable extended term. For the following reasons, we reverse, and reduce defendant's sentence to 12 years' imprisonment.

¶ 3    Because defendant does not challenge the sufficiency of the evidence to sustain his conviction, we recite only those facts necessary to our disposition. Defendant was charged with two counts of armed robbery, one count of vehicular invasion, and two counts of aggravated unlawful restraint. The evidence at trial established that on January 14, 2015, the victim, Shaun Starks, drove a taxi cab. Starks picked up defendant and three other men shortly after midnight near Damen Avenue and Irving Park Road. Defendant sat in the front passenger seat and gave Starks instructions regarding where to take them. After making stops at two other locations, Starks finally took the men to a Walgreens located at Damen and Milwaukee Avenue. The men in the backseat exited the cab and defendant remained in the front seat. Defendant pulled out what appeared to be a silver revolver and instructed Starks to give him his wallet and drop his phone. Starks' wallet contained his identification, chauffeur's license, "probably some debit cards," a social security card, and $40. Starks thereafter exited the cab and walked to find a police officer. Defendant remained in the cab. Starks saw another cab driver and got into that vehicle to call police. While still at Damen and Milwaukee, Starks observed defendant run down Milwaukee and turn onto Damen. The State introduced into evidence a video that depicted portions of the events that took place in the Walgreens parking lot.

¶ 4    When the police arrived after about two minutes, Starks gave a description of defendant and the three other men. He rode around in the police car. Eventually, the car stopped at Lake Street and Hermitage Avenue and Starks identified a man in police custody as the person who took his wallet. Later, at the police station, Starks identified a photograph of what looked like a gun that

looked like the gun used against him in his cab. Starks identified defendant in court as the person who was sitting in the front seat of his cab and who took his money.

¶ 5    Chicago police officer Derrick Darnall received a flash message on the night in question which described an armed robbery and gave a description of four offenders. Approximately 15 minutes later, while on patrol in a marked car with his partner near Lake and Damen, he observed four men, two of whom matched the description of the offenders. When the men observed the police car, they fled. One man, later identified as defendant, split from the other three. Darnall, who had been in the passenger seat of the police car, pursued defendant on foot through a courtyard to Paulina Street. Darnall's partner drove around the block to Paulina. As Darnell reached Paulina behind defendant, he observed defendant "giv[e] himself up" to his partner. Starks identified defendant as the offender, and the police recovered $33 in cash from defendant.

¶ 6    Another officer searched the courtyard through which Darnall pursued defendant and recovered a "replica handgun," which was photographed. The photograph was shown to Starks at the police station.

¶ 7    The trial court found defendant guilty of the lesser-included offense of robbery. The court subsequently denied defendant's motion for a new trial.

¶ 8    At sentencing, the trial court heard evidence in aggravation and mitigation. Defendant's presentence investigation report (PSI) showed he had four prior convictions from 2008: two for robbery and two for armed robbery. Defendant was 17-years old at the time of the 2008 offenses. At that time, defendant was not considered a juvenile. 705 ILCS 405/5-120 (West 2008) ("Proceedings may be instituted under the provisions of this Article concerning any minor who prior to the minor's 17th birthday has violated or attempted to violate, regardless of where the act occurred, any federal or State law or municipal or county ordinance."). Under current Illinois law

defendant would be treated as a juvenile for purposes of the prior offenses. 705 ILCS 405/5-120 (West 2018) ("Proceedings may be instituted under the provisions of this Article concerning any minor who prior to his or her 18th birthday has violated or attempted to violate, regardless of where the act occurred, any federal, State, county or municipal law or ordinance."). For the prior offenses defendant was sentenced to seven years for each robbery and nine years for each armed robbery, with all of the sentences running concurrently. The PSI also showed he had been raised by his grandmother and his father and had a "normal" childhood.

¶ 9    In aggravation, the State noted defendant's four 2008 convictions. The State argued that, despite defendant's criminal background, he continued "to be out on the street causing havoc and taking items that do not belong to him." Based on his criminal background, the State argued defendant was eligible for an extended term and requested defendant be sentenced to "a substantial amount of time."

¶ 10    In mitigation, defense counsel noted defendant was 24 years old at the time of the offense and "was DCFS involved and was not raised by his mother." Counsel argued that defendant served the sentences for all of his prior convictions concurrently so "he is not the hardened criminal that might otherwise be indicated," and was "looking for an opportunity to better himself." Counsel asked that the trial court decline to sentence defendant to an extended term of imprisonment.

¶ 11    The trial court found defendant was eligible for an extended term sentence and sentenced defendant to 14 years' imprisonment. In imposing sentence, the court considered the evidence presented at trial, the PSI, the evidence in aggravation and mitigation, the statutory factors in aggravation and mitigation, the financial impact of incarceration, and the arguments presented by the parties. The court stated the sentence "will reflect what [the court] consider[s] to be a fairly

substantial background on the part of the defendant." It further noted the sentence was intended "to reflect the seriousness of his conduct and his background."

¶ 12    Defendant filed a motion to reconsider sentence, challenging the 14-year extended term sentence as excessive. The court denied the motion. This appeal followed.

¶ 13    On appeal, defendant contends the trial court abused its discretion in sentencing him to the maximum legally allowable prison sentence available in light of the nature of the offense, his youth, and his rehabilitative potential.

¶ 14    The State argues the trial court exercised appropriate discretion in sentencing defendant to 14 years' imprisonment. The State asserts that in imposing sentence the court "considered evidence offered in aggravation and mitigation, the evidence elicited at trial, the PSI, statutory factors in aggravation and mitigation, the financial impact of incarceration, and the arguments of the attorneys." The State asserts that the trial court was "clearly aware of *** the nature of defendant's criminal background" and "his potential for rehabilitation."  The State argues defendant has failed to point to specific evidence the trial court failed to consider that defendant's prior offenses resulted in concurrent sentences or that the offenses occurred when defendant was 17-years old, or that the court failed to consider "the attendant circumstances of youth" that existed when defendant committed the prior offenses (and, perhaps, at the time of the instant offense at 24-years old).

¶ 15     A trial court's sentence is afforded great deference on appeal and will not be reversed absent an abuse of discretion. *People v. Butler*, 2013 IL App (1st) 120923, ¶ 30 (citing *People v. Stacey*, 193 Ill. 2d 203, 209-210 (2000)). A sentence within the statutory range is not an abuse of discretion unless it is "manifestly disproportionate to the nature of the offense" (*People v. Jackson,* 375 Ill. App. 3d 796, 800 (2007)), "greatly at variance with the spirit or purpose of the law[,] or is

manifestly disproportionate to the crime" (*People v. Suggs*, 2020 IL App (2d) 170632, ¶ 41). When fashioning an appropriate sentence, the trial court considers such factors as "a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment." *People v. Hernandez*, 319 Ill. App. 3d 520, 529 (2001). Absent some affirmative indication to the contrary, other than the sentence itself, we presume the trial court considered all mitigating evidence before it. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. The trial court, having observed the proceedings, is in the best position to weigh the relevant sentencing factors. *People v. Arze*, 2016 IL App (1st) 131959, ¶ 121. Accordingly, we do not substitute our judgment for that of the trial court merely because we would have balanced the appropriate sentencing factors differently. *People v. Alexander*, 239 Ill. 2d 205, 214 (2010). If this court determines that the trial court abused its discretion in sentencing a defendant Illinois Supreme Court Rule 615(b)(4) (eff. Jul. 1, 2017) empowers this court to reduce the sentence. *People v. Juarez*, 278 Ill. App. 3d 286, 294 (1996), *People v. Reed*, 2018 IL App (1st) 160609, ¶ 59. "It may be appropriate for the appellate court to impose sentence rather than exhaust additional judicial resources that would be expended by ordering a new sentencing hearing." *Juarez*, 278 Ill. App. 3d at 294.

¶ 16    The parties do not dispute that defendant was eligible for an extended term sentence. The legislative objective underlying the extended-term sentencing statute is to punish repeat criminal offenders more severely. *People v. Garcia*, 241 Ill. 2d 416, 422 (2011). "Consistent with this purpose, the plain language of the statute authorizes an extended-term sentence based on a defendant's prior criminal conviction within the preceding 10 years, excluding time spent in custody." *Id*. at 422. Our supreme court allows "the sentencing court some discretion in 'reconsidering' as an aggravating factor *** that which, arguably, had already been considered by

the legislature in establishing the applicable sentencing range for the offense." *People v. Thomas*, 171 Ill. 2d 207, 227 (1996), citing *People v. Saldivar*, 113 Ill. 2d 256, 271 (1986). This court has expressly held that "a prior conviction used to impose an extended sentence may also be considered as an aggravating factor." *People v. Anderson*, 211 Ill. App. 3d 140, 144 (1991). The discretion to do so is not limitless, however. In "reconsidering" a fact which, arguably, has already been considered by the legislature in establishing the applicable sentencing range, the sentencing court should look to the "nature" of that fact and the circumstances surrounding it, rather than the mere fact of its existence. See *Saldivar*, 113 Ill. 2d at 269-71.

¶ 17    In *Saldivar*, our supreme court held that "in sentencing a defendant on a conviction for voluntary manslaughter it is permissible for the trial court, in applying the statutory aggravating factor that the defendant's conduct caused serious harm to the victim, to consider the force employed and the physical manner in which the victim's death was brought about." *Id*. at 271. However, the court held that in that case the sentencing court had abused its discretion in sentencing the defendant because the sentencing court failed to consider "the degree or gravity" of the factor at issue but instead "focused primarily" on the mere existence of that fact. *Id*. at 271-72 (reducing the defendant's sentence where the sentencing court considered in aggravation "the end result" of the defendant's conduct, "*i.e.*, the death of the victim," rather than "the force employed and the physical manner in which the victim's death was brought about or the nature and circumstances of the offense, including the nature and extent of each element of the offense"). See also *People v. Tatera*, 2018 IL App (2d) 160207, ¶ 72 ("It has long been established that the fact of a defendant's prior convictions may determine his or her eligibility for a Class X sentence, but in determining the length of the defendant's sentence the trial court remains free to consider *the*

*nature and circumstances of those prior convictions* along with all of the other factors in mitigation and aggravation.") (Emphasis added.).

¶ 18    In this case, the trial court sentenced defendant to an extended term of 14 years' imprisonment for the Class 2 offense of robbery. This sentence, while being the maximum allowable, was within the statutory range. See 720 ILCS 5/18-1(c) (West 2016)) ("Robbery is a Class 2 felony"); 730 ILCS 5/5-4.5-35(a) (West 2016)) ("The sentence of imprisonment for an extended term Class 2 felony *** shall be a term not less than 7 years and not more than 14 years"). Thus,

> "[w]e presume that sentence[ was] proper and will overturn or reduce [the] sentence [if it is]: (i) affirmatively shown to greatly depart from the spirit and purpose of the law, or (ii) [is] manifestly contrary to constitutional guidelines. [Citation.] A sentence promotes the spirit and purpose of the law when it reflects the seriousness of the offense and gives adequate consideration to defendant's rehabilitative potential." *People v. Burton*, 2015 IL App (1st) 131600, ¶ 36, citing *People v. Boclair*, 225 Ill. App. 3d 331, 335 (1992).

¶ 19    On appeal, defendant argues the trial court abused its discretion because the sentence resulted from the court's fixation "on what it 'consider[ed] to be a fairly substantial background on the part of the defendant' " as well as the fact the court "overlooked *** his considerable potential for rehabilitation." The State, in its argument in aggravation in the trial court, focused on the four prior convictions. The State argued at the sentencing hearing that defendant's criminal background proved he "never learned his lesson." When the trial court imposed sentence following argument the court stated its sentence would "reflect what I consider to be a fairly substantial background on the part of the defendant." The court found defendant eligible for an extended term

sentence which, as noted above, already provides for a broader sentencing range based on a defendant's criminal background. The court then stated "it is this court's desire to reflect the seriousness of his conduct and his background by sentencing the defendant today to a period of 14 years."

¶ 20 When conducting our deferential review of the trial court's sentence we are to consider the record as a whole including the State's arguments. *People v. Maron*, 2019 IL App (2d) 170268, ¶¶ 81-82. Based on the State's arguments and the trial court's comments at sentencing we believe the trial court afforded excessive weight to the fact of defendant's prior convictions rather than the nature and circumstances of those prior convictions. *Saldivar*, 113 Ill. 2d at 269-71. See also *People v. Daly*, 2014 IL App (4th) 140624, ¶ 34 ("Although the trial court was required to consider 'the nature and circumstances of the offense' and 'the history, character and condition of the offender,' the court did not reference the specific facts of this case at sentencing."). The extended term sentencing statute "takes into consideration criminal history and reflects the legislature's judgment that repeat offenders deserve longer sentences." *People v. Allen*, 2017 IL App (1st) 151540, ¶ 16. The trial court's discretion to tailor the sentence within the appropriate sentencing range must then "be tempered by the amount of harm the defendant inflicted, that is, the seriousness of the offense." *Id*. "The legislature has created sentencing ranges, and it is the trial court's job, and then our job, to impose a sentence that is appropriate, just, and proportionate, depending on the nature, seriousness, and character of the offense." *Id*.

¶ 21 In this case, the trial court could properly sentence defendant within the extended term sentencing range but at that point the sentence had to reflect primarily the seriousness of the offense. *People v. Contursi*, 2019 IL App (1st) 162894, ¶ 24 ("The most important sentencing factor is the seriousness of the offense").

"Sound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the criminal offense committed. Certain criminal conduct may warrant a harsher penalty than other conduct, even though both are technically punishable under the same statute. Likewise, the commission of any offense, regardless of whether the offense itself deals with harm, can have varying degrees of harm or threatened harm. The legislature clearly and unequivocally intended that this varying quantum of harm may constitute an aggravating factor. While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the degree of harm caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence." *Saldivar*, 113 Ill. 2d at 269.

Defendant committed a robbery with a replica gun in which no one was injured and the proceeds were minimal, yet he received the maximum sentence allowed under the extended term sentencing statute. We believe such a sentence is manifestly disproportionate and varies from the purpose and spirit of both the robbery statute and the extended term sentencing statute.

¶ 22     The trial court also sentenced defendant to the maximum extended term allowable under the law based on his "criminal background" despite the fact defendant committed those offenses in 2008 when he was 17-years old, seven years had elapsed since defendant served a concurrent sentence for those convictions, and under current Illinois law would have been treated as a juvenile for the four 2008 offenses.  Further, despite defendant's failure to point to affirmative evidence the trial court failed to consider "when" defendant's prior offenses occurred when considering his rehabilitative potential, we are not persuaded the trial court followed the law to consider the nature and circumstances surrounding those convictions or to consider defendant's rehabilitative potential

in light of defendant's "youth and its attendant characteristics," including juveniles' "immaturity, impetuosity, and failure to appreciate risks and consequences" or "the family and home environment that surround[ed] him" or the way "peer pressures may have affected him" (*People v. Holman*, 2017 IL 120655, ¶¶ 36-45, citing *Miller v. Alabama*, 567 U.S. 460 (2012)), "when" defendant committed the prior offenses. *Burton*, 2015 IL App (1st) 131600, ¶ 36. See generally *People v. Smolley*, 2018 IL App (3d) 150577, ¶ 22 ("While the trial court stated that it considered the statutory aggravating and mitigating factors, the court never mentioned defendant's youth and its attendant characteristics. Thus, defendant is entitled to a new sentencing hearing where the trial court must consider the factors set forth in section 5-4.5-105 of the Code."), see also *People v. Aikens*, 2016 IL App (1st) 133578, ¶ 38 (finding sentencing scheme at issue violated Proportionate Penalties Clause as applied to the defendant, reversing and remanding for "resentencing in line with the new sentencing scheme, without imposition of [a] mandatory enhancement," and noting with regard to "*Miller* factors" that "[w]hile these provisions do not apply retroactively, they are indicative of a changing moral compass in our society when it comes to trying and sentencing juveniles as adults").

¶ 23    "While the trial court has discretion in sentencing, the exercise of that discretion has limits and is not 'totally unbridled.' (Internal quotation marks omitted.) See *People v. Brown*, 2015 IL App (1st) 130048, ¶ 42; *People v. Daly*, 2014 IL App (4th) 140624, ¶ 26 ('the appellate court was never meant to be a rubber stamp for the sentencing decisions of trial courts')." *Allen*, 2017 IL App (1st) 151540, ¶ 15. We have a duty to overturn a sentence when it fails to reflect the seriousness of the offense or to give adequate consideration to defendant's rehabilitative potential. *Burton*, 2015 IL App (1st) 131600, ¶ 36. We note, as this court did in *Allen*, that although we conclude the sentence in this case amounts to an abuse of discretion, "[w]e are not substituting our

judgment for that of the trial court, or reweighing the factors." *Allen*, 2017 IL App (1st) 151540, ¶ 15. "[I]nstead, we have applied the law to the circumstances and evidence presented." *Id*. We have concluded the trial court gave improper consideration to the *fact* of defendant's prior convictions as an aggravating factor and we cannot discern whether the trial court fully considered the nature and circumstances of the prior convictions or defendant's rehabilitative potential given that his prior convictions resulted from defendant's conduct at 17 years' of age with its "attendant circumstances of youth." Accordingly, we hold the trial court abused its discretion. Having found an abuse of discretion we believe this is a case where it would be "appropriate for the appellate court to impose sentence rather than exhaust additional judicial resources that would be expended by ordering a new sentencing hearing." *Juarez*, 278 Ill. App. 3d at 294. Given all of the surrounding circumstances we choose to exercise our authority under Rule 615(b)(4) and impose a new sentence. *Id*. Defendant's sentence of 14 years' imprisonment is vacated. Defendant is sentenced to 12 years' imprisonment in the Illinois Department of Corrections. The remainder of the prior sentencing judgment is affirmed.

¶ 24   For the foregoing reasons, defendant's sentence of 14 years' imprisonment is vacated and defendant is sentenced to 12 years' imprisonment, and the remainder of defendant's sentence is affirmed.

¶ 25   Vacated in part, affirmed in part, judgment entered.