# Illinois Official Reports

## Appellate Court

---

### *People v. Johnson*, 2017 IL App (4th) 160853

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARCUS A. JOHNSON, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-16-0853 |
| Filed | October 19, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Champaign County, No. 14-CF-383; the Hon. Heidi N. Ladd, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Jacqueline L. Bullard, and Sheril J. Varughese, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Julia Rietz, State's Attorney, of Urbana (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.<br>Presiding Justice Turner and Justice Harris concurred in the judgment and opinion. |

¶ 1 In May 2014, defendant, Marcus A. Johnson (born September 28, 1996), waived his right to juvenile court jurisdiction and entered into an open guilty plea to aggravated robbery. See 705 ILCS 405/5-130(b)(i) (West 2014); 720 ILCS 5/18-1(b)(1) (West 2014). In July 2014, the trial court sentenced defendant to a term of 24 years' imprisonment, followed by a two-year term of mandatory supervised release (MSR). In September 2014, the court denied defendant's motion to reconsider the sentence but, on its own motion, reconsidered that denial in October 2014. Accordingly, in October 2014, the court sentenced defendant to a term of 16 years' imprisonment followed by a two-year term of MSR.

¶ 2 Defendant appealed, and this court docketed the case as No. 4-14-0869 and entered an order summarily remanding for strict compliance with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016). Defendant thereafter filed a second motion to reconsider his sentence, which the trial court denied.

¶ 3 Defendant appeals, arguing that the trial court erred by considering, as an aggravating factor at sentencing, that defendant indicated he had a firearm, which was a factor inherent in the offense of aggravated robbery. For the following reasons, we affirm.

¶ 4                            I. BACKGROUND
¶ 5                             A. Guilty Plea
¶ 6 On May 16, 2014, defendant waived juvenile court jurisdiction and entered an open plea to a count of aggravated robbery. The factual basis showed the charge arose out of a March 2014 incident in which two teenaged males, later identified as defendant and his codefendant (Erion Davis-Murdock), forced their way into Rebecca Runge's residence. Runge's daughter responded to a knock at the door, and one of the males pushed his way into the home and walked through the living room. The other male pushed Runge's daughter onto the couch, grabbed a cordless telephone from her, and pointed what she perceived to be a gun at her forehead.

¶ 7 Runge, aged 71, heard a loud noise and male voices, which drew her to the front room of the residence where she saw the two males yelling at her daughter. Runge's daughter grabbed a cordless telephone to call the police and one of the males, Davis-Murdock, took the phone from her. Runge then went into the bathroom to call the police on her red, flip-style cellular phone. One of the males, later identified as defendant, came into the bathroom, displayed what Runge perceived to be a small black gun, and took the cellular phone from her. Defendant was found two blocks away, hiding under a pickup truck where officers also found Runge's red, flip-style cellular phone. Officers never located guns, ammunition, or objects that appeared to be guns or ammunition.

¶ 8 The trial court found a factual basis and accepted defendant's guilty plea to one count of aggravated robbery. The court noted the charge was a Class 1 felony eligible for extended-term sentencing because the felony was committed against a person over the age of 60.

¶ 9                          B. Sentencing Hearing
¶ 10 In July 2014, the trial court held a sentencing hearing. Prior to the hearing, defendant submitted additions to the presentence investigation report (PSI), which the court stated it

considered in making its sentencing determination. Those documents disclosed that defendant was born with cocaine in his system and went to live with his adoptive mother at seven days old. In 2009, defendant's adoptive father and sister passed away. A 2011 psychiatric evaluation indicated past sexual abuse, but defendant declined to discuss the incident. Defendant was diagnosed with attention deficit hyperactivity disorder, but he did not take his medication regularly. Another 2011 mental-health assessment indicated defendant had ongoing mental-health issues and at times heard voices calling to him when he was angry. Defendant reported his involvement with a gang and struggled with choosing between gang influences and making good choices.

¶ 11    The PSI showed defendant was adjudicated in 2011 for possessing cannabis with the intent to sell on school grounds in Champaign County case No. 11-JD-37. Defendant was sent to the Department of Juvenile Justice on an interim commitment. That order was vacated in July 2011, and defendant was placed on probation. One month later, the State filed a petition to revoke defendant's probation. Defendant failed to appear at the hearing to revoke his probation, but he was eventually apprehended on a warrant. His probation was revoked and he was resentenced to the Department of Juvenile Justice. Defendant was also sentenced to the Department of Juvenile Justice for a 2012 burglary charge (Champaign County case No. 12-JD-17) and a 2013 criminal damage to property charge (Champaign County case No. 13-JD-60).

¶ 12    At the sentencing hearing, the State introduced into evidence three letters defendant wrote in April 2014 while a detainee of the juvenile detention center. The letters contained various references to defendant's gang, "Only the Dawgz." In one of the letters, defendant asked the intended recipient to pass along gang-related threats. The letters also contained references to the news coverage of defendant's case and comments about the crime. For example, in one letter, defendant wrote, "An[d] you know me an[d] my lil' brother made the news paper!!! Ask my mom[,] it was saying how we put guns to the family head and shyt [*sic*] but stuff happens." Defendant also asked the intended recipients of the letters to post threats and messages of support on social media.

¶ 13    Officer Timothy Atteberry testified that he acted as the juvenile officer the night defendant was arrested and sat in while police interviewed defendant. Following the interviews, Atteberry transported defendant and Davis-Murdock to the juvenile detention center. The State played an audio and video recording of defendant and Davis-Murdock while Atteberry transported them. The recording, made a few hours after the offenses were committed, depicts defendant and Davis-Murdock laughing, joking, and making gang references.

¶ 14    The State argued that defendant had little rehabilitative potential, pointing to his prior offenses, continued criminality, and escalation of violence. The State emphasized the seriousness of the offense and the impact it had on Runge and her daughter. Based on the recording and defendant's intercepted letters after his arrest, the State argued he showed no remorse and intended to continue his gang affiliation and activity. Accordingly, the State asked for an extended-term sentence of 24 years' imprisonment.

¶ 15    Counsel for defendant emphasized the fact he was only 17 years old and argued that Davis-Murdock was the leader on the night they entered Runge's home. Counsel argued that the commission of the crime and the laughing and joking afterward was bravado and not who defendant truly was. Defendant had been in the detention center for three months and reports showed he was behaving himself. Counsel asserted defendant's life had been tumultuous,

having been adopted at seven days old but maintaining contact with his biological parents. Counsel also noted the loss of defendant's adoptive father and sister in 2009. Defendant was not a member of a gang but had a close group of friends who decided to give their clique a name. Counsel asked for a minimal sentence.

¶ 16 The trial court stated, in part, it considered all relevant statutory factors, including (1) the nature and circumstances of the offense and (2) the evidence and applicable factors in aggravation and mitigation. The court engaged in a lengthy discussion regarding defendant's prior criminal history, his opportunities and upbringing, his attitude, and his gang membership. The court then turned to the nature and circumstances of the offense and noted defendant and Davis-Murdock forced their way into a 71-year-old woman's home. The court discussed the offense as follows:

"They then confronted first the daughter. When she attempted to call for help, they grabbed the phone from her. This defendant was the one who pushed her down on the sofa. There is nothing in the factual basis that he attempted to stop what was going on or to withdraw or that he was reluctant. He was an active participant. He pointed the gun at her forehead. She believed it was a real gun. The weapons were never recovered, although the conversation references to the weapons in the notes certainly make it sound like they existed, whatever they were, real or not, and in this case since he pled guilty to aggravated robbery, I will consider only that he acted like he had a weapon. But it for all purposes appeared real to the victims. And this gun was literally pointed at the forehead first of the fifteen year old and then at Mrs. Runge while she was trying to go back to the bathroom to check on her granddaughter and call on a different phone for help."

¶ 17 The trial court noted defendant showed no remorse in his conduct following the offense, laughing and joking in the squad car, and then writing letters that threatened future gang-related retaliation and violence. The court observed defendant appeared enamored with the gang lifestyle and described him as "riveted" and "rather self satisfied" while watching the video from the squad car. The victim impact statements showed how terrified Runge and her daughter were by the incident.

¶ 18 Finally, the trial court stated that the factors in aggravation far outweighed those in mitigation. Although defendant's age was a factor in mitigation, his criminal history, including four felony convictions of increasing seriousness, weighed against this factor. The court then said, "He did threaten—his conduct did threaten violence. Well, that's inherent in the charge. The fact that it was visited upon the victims in their own home is not, and that's a factor in aggravation." The court found defendant was likely to engage in similar dangerous behavior based on his attitude and his embrace of his lifestyle. The court found an extended-term sentence appropriate and sentenced defendant to a term of 24 years' imprisonment.

¶ 19 Defendant timely filed a motion to reconsider his sentence. At the September 3, 2014, hearing on the motion to reconsider defendant's sentence, the trial court made the following relevant comments: "[T]he [c]ourt considered the fact that this happened in the home. *** [N]o gun or ammunition were ever found, and neither suspect discharged, fired[,] or loaded any weapon. And so, the [c]ourt did not consider that beyond what would define the elements of the offense." The court also stated, "the suggestion that there may not have been a gun and that, simply, the [d]efendant was indicating by his actions he had a gun to the victims is exactly

what he pled guilty to and that's exactly what he was sentenced for."

¶ 20                           C. Remaining Procedural History

¶ 21        We summarize the following procedural background necessary to resolve a jurisdictional argument raised by the State:

On July 17, 2014, following the guilty plea and sentencing, defendant timely filed a motion to reconsider his sentence.

On September 3, 2014, following a hearing, the trial court denied defendant's motion to reconsider the sentence.

On September 4, 2014, defendant filed a notice of appeal (identifying the May 16, July 2, and July 17 judgments), which this court docketed as No. 4-14-0782.

On September 26, 2014, the trial court notified the parties of its intent, in light of defendant's codefendant receiving a 12-year sentence, to reconsider the September 3, 2014, denial of defendant's motion to reconsider. The court wished to reconsider the denial of the motion to reconsider the sentence based on Davis-Murdock's negotiated plea for 12 years' imprisonment for the same offense. Accordingly, on the court's own motion, the matter was set for further hearing on October 2, 2014. The court further directed the office of the State Appellate Defender to withdraw the appeal in case No. 4-14-0782 to allow jurisdiction to return to the trial court.

On September 29, 2014, this court allowed defendant's motion to dismiss the appeal in case No. 4-14-0782. On September 30, 2014, the appellate court mandate was filed in the circuit court.

On October 2, 2014, the trial court held a hearing to reconsider the September 3, 2014, denial of defendant's motion to reconsider the sentence. That same day, the court entered an amended judgment sentencing defendant to 16 years' imprisonment and a 2-year term of MSR.

On October 3, 2014, defendant filed a notice of appeal (identifying the October 2 sentencing judgment), which this court docketed as No. 4-14-0869.

On May 24, 2016, the trial court entered a second amended judgment sentencing defendant to 24 years' imprisonment. The record contains no related transcripts or motions.

On August 1, 2016, this court, based on defendant's agreed motion for summary remand, remanded the matter to the trial court for strict compliance with Illinois Supreme Court Rule 604(d) (eff. Mar. 8, 2016).

On August 26, 2016, defendant filed a second motion to reconsider his sentence.

In September 2016, following a hearing on the second motion to reconsider the sentence, the trial court denied the motion and entered a third amended judgment sentencing defendant to 16 years' imprisonment and a 2-year term of MSR. That same month, defendant filed a notice of appeal in the present case, which this court docketed as No. 4-16-0853.

¶ 22        This appeal followed.

¶ 23                                    II. ANALYSIS

¶ 24        On appeal defendant argues the trial court erred by considering, as an aggravating factor at sentencing, that defendant indicated he had a firearm, which was a factor inherent in the offense of aggravated robbery. We turn first to a jurisdictional issue raised by the State.

¶ 25                                    A. Jurisdiction

¶ 26        The State contends defendant's September 4, 2014, notice of appeal (docketed as No. 4-14-0782) deprived the trial court of jurisdiction to reconsider the denial of the motion to reconsider sentence and enter the October 2014 amended sentencing order. According to the State, the dismissal of appeal No. 4-14-0782 did not return jurisdiction to the trial court because this court did not specifically remand the matter to the trial court. Based on this lack of jurisdiction to enter the October 2, 2014, order, the State asserts the order was void and asks this court to vacate it. However, the State argues that this court had jurisdiction over appeal No. 4-14-0869, which was filed October 3, 2014, because that was the thirtieth day following the trial court's September 3, 2014, denial of defendant's motion to reconsider his sentence. After remand in case No. 4-14-0869 for strict compliance with Rule 604(d), defendant filed another motion to reconsider his sentence, which the court denied, and defendant again appealed. Therefore, the State contends this court has jurisdiction over this appeal.

¶ 27        The jurisdictional question before this court is narrow. We must determine whether the trial court had jurisdiction to enter the October 2, 2014, order where the court, on its own motion, reconsidered its previous denial of defendant's motion to reconsider his sentence. That order was entered within 30 days of the denial of the motion to reconsider defendant's sentence—a period during which the court retains jurisdiction. A trial court generally loses jurisdiction "at the end of the 30-day window following the entry of a final judgment." *People v. Bailey*, 2014 IL 115459, ¶ 8, 4 N.E.3d 474.

¶ 28        As noted above, the State contends the dismissal of appeal No. 4-14-0782 did not return jurisdiction to the trial court because this court did not remand the matter to the trial court. In support, the State cites *Bank of Viola v. Nestrick*, 94 Ill. App. 3d 511, 418 N.E.2d 515 (1981), and *People v. Vasquez*, 339 Ill. App. 3d 546, 791 N.E.2d 33 (2003). In *Bank of Viola*, a trial was held and judgment was entered in favor of the defendant. *Bank of Viola*, 94 Ill. App. 3d at 512, 418 N.E.2d at 517. The bank appealed, and the appellate court reversed in an opinion filed on May 31, 1979, and the mandate from the appellate court was filed in the circuit court on July 30, 1979. *Id.* In June 1979, prior to the filing of the mandate (*i.e.*, prior to reinstatement of jurisdiction in the trial court and while the appellate court retained jurisdiction), the trial court allowed a motion to withdraw as defense counsel. *Id.* Apparently based on the appellate court opinion, although the mandate had not yet been filed, the bank filed a notice to schedule a trial date. *Id.* On July 18, 1979, the trial court held a hearing and set a date for a trial on the merits. *Id.* "That the circuit court had proceeded with the withdrawal motion and with the motion to set a trial date at a time prior to the return of the mandate was apparently the result of clerical error." *Id.*

¶ 29        The trial court held a hearing on the merits on September 12, 1979, after the appellate court mandate was filed in the circuit court, reinstating jurisdiction. *Id.* at 513, 418 N.E.2d at 517. However, the appellate court determined reversal was required because "significant matters affecting the case were decided by the trial court during a time when it had no jurisdiction over the case." *Id.* at 514, 418 N.E.2d at 518. Specifically, the appellate court held (1) the hearing to

set a trial date was held when the court had no jurisdiction, (2) the order permitting defense counsel to withdraw and the order setting the matter for a trial date were entered when the circuit court had no jurisdiction, and (3) the "court's actions, taken when it ha[d] no jurisdiction over a case, [had] no effect and are null and void." *Id.* at 514, 418 N.E.2d at 518-19. Accordingly, the appellate court vacated the trial court's judgment and reversed and remanded for further proceedings. *Id.* at 516, 418 N.E.2d at 520.

¶ 30    Unlike *Bank of Viola*, the present case does not involve actions taken during the pendency of an appeal. Here, defendant filed a notice of appeal, but then filed a motion to dismiss the appeal within 30 days after the filing of the circuit court's final judgment denying the motion to reconsider defendant's sentence. *Bank of Viola* does not address such a situation. Rather, it focuses on actions taken by the circuit court prior to the filing of the appellate mandate remanding and reinstating jurisdiction in the circuit court. Accordingly, we do not find *Bank of Viola* instructive in the present case.

¶ 31    In *Vasquez*, on May 28, 1996, the trial court denied the defendant's motion for a new trial and sentenced the defendant, *in absentia*, to 19 years' imprisonment. *Vasquez*, 339 Ill. App. 3d at 548, 791 N.E.2d at 34. The trial court said it would "continue" the case to hear a motion to reconsider the sentence once the defendant was returned to custody. *Id.* Also on May 28, 1996, the defendant filed a timely notice of appeal. *Id.* On April 3, 1997, on the State's motion, the appellate court dismissed the defendant's direct appeal. *Id.* In July 1999, the defendant was arrested on an outstanding warrant and the trial court entered judgment on the 1996 sentence. *Id.* at 548-49, 791 N.E.2d at 34. Thereafter, defense counsel filed motions to reduce the sentence and for a new trial. *Id.* at 549, 791 N.E.2d at 34-35. In February 2001, the court held a sentencing hearing and reduced the defendant's sentence to 17 years' imprisonment. *Id.* at 549, 791 N.E.2d at 35. A subsequent motion to reduce or modify the sentence was denied and, on March 9, 2001, the defendant filed a second notice of appeal. *Id.*

¶ 32    The *Vasquez* court determined that the trial court lost jurisdiction upon the May 28, 1996, filing of the first notice of appeal. *Id.* at 550, 791 N.E.2d at 35. Under the fugitive rule, the appellate court dismissed that appeal on April 3, 1997. *Id.* However, "[t]hat dismissal did not, as [the] defendant implie[d], reinvest the trial court with jurisdiction to hear the series of motions filed in 1999 upon [the] defendant's return." *Id.* at 550, 791 N.E.2d at 35-36. The appellate court rejected the defendant's attempt to rely on the *absentia* statute (725 ILCS 5/115-4.1(e) (West 2000)), and held the trial court's February 2001 order reducing the defendant's sentence was void for lack of jurisdiction. *Id.* at 551, 791 N.E.2d at 36.

¶ 33    We find *Vasquez* distinguishable. As discussed above, the *Vasquez* court held that the dismissal of an appeal under the fugitive rule almost one year after the filing of the notice of appeal did not reinvest the trial court with jurisdiction to hear motions filed more than three years after the defendant's conviction and sentence became final. In the present case, the appeal was dismissed within 30 days of the circuit court's denial of the motion to reconsider defendant's sentence. Under these circumstances, we think the dismissal of appeal No. 4-14-0782 and the subsequent hearing to reconsider the denial of defendant's motion to reconsider his sentence is more appropriately treated as a request for reconsideration of a ruling on a postjudgment motion. When a court denies a postjudgment motion, the final judgment remains intact. *Gibson v. Belvidere National Bank & Trust Co.*, 326 Ill. App. 3d 45, 48, 759 N.E.2d 991, 994 (2001). In such a case, "further motions for reconsideration may be

filed within 30 days of the denial, but they will not stay the time for filing a notice of appeal." *Id.* at 48-49, 759 N.E.2d at 994.

¶ 34    Our research has revealed no case that considers a trial court's jurisdiction over a matter where an appeal from the denial of a postjudgment motion is dismissed within 30 days of the entry of the denial. Clearly, if the appeal were dismissed after the expiration of the 30 days following the denial, the trial court would not have jurisdiction, as in *Vasquez*. The court's motion to reconsider the denial of defendant's motion to reconsider his sentence is not a timely postjudgment motion as contemplated by Illinois Supreme Court Rule 606(b) (eff. Dec. 11, 2014), where a notice of appeal is of no effect when a circuit court has continuous jurisdiction because the defendant's timely filed postjudgment motion remained pending. See *People v. Fuller*, 2013 IL App (3d) 110391, ¶ 28, 990 N.E.2d 882. However, when defendant sought dismissal of his appeal in No. 4-14-0782 and the appellate court dismissed the appeal and filed the mandate with the circuit court, we do not see why jurisdiction would not return to the circuit court for the remainder of the 30-day period following the denial of defendant's motion. The State cites no clearly contrary authority. Rather, we conclude the trial court retained jurisdiction for the remainder of the 30 days following its denial of defendant's motion to reconsider his sentence.

¶ 35    Although not precisely on point, we find some guidance in *People v. Miraglia*, 323 Ill. App. 3d 199, 753 N.E.2d 398 (2001). In *Miraglia*, the defendant filed a motion to reconsider the judgment of guilty. *Id.* at 201, 753 N.E.2d at 400. On November 9, 1999, the trial court denied the motion and sentenced the defendant. *Id.* That same date, the defendant filed a notice of appeal. *Id.* On November 23, 1999, new defense counsel filed an amended notice of appeal. *Id.* On December 8, 1999, defense counsel filed a second posttrial motion, which the trial court denied on December 13, 1999. *Id.* at 201-02, 753 N.E.2d at 400. Although the appellate court questioned the filing of this second repetitious postjudgment motion, it acknowledged the trial court had jurisdiction to rule upon the motion because it was filed within 30 days of the final sentencing judgment. *Id.* at 204, 753 N.E.2d at 402. The court reasoned that because the filing of the second motion rendered the original notice of appeal ineffectual, and the denial of the second motion was final when the court denied it on December 13, 1999, the 30-day period for filing an appeal began anew. *Id.*

¶ 36    Following the December 13, 1999, denial of the second postjudgment motion, "no new notice of appeal was filed until after the ruling on the third motion, on January 20, 2000, a date well beyond the prescribed 30-day period for appeal." *Id.* at 204, 753 N.E.2d at 403. The appellate court determined that the trial court did not have the "authority to extend the time for appeal, under the guise of hearing a successive, amended motion after ruling on the prior motion—by allowing yet another posttrial motion to be filed on January 11 and ruling on it on January 20, 2000." *Id.* at 204-05, 753 N.E.2d at 403. The appellate court was clear: "a trial court cannot permit a defendant to file a postjudgment motion directed against the final judgment, rule on it, and then rule on a motion to reconsider the denial of that posttrial motion and thereby extend its jurisdiction and the time for appeal." *Id.* at 205, 753 N.E.2d at 403.

¶ 37    To the extent that the reconsideration of the denial of the motion to reconsider defendant's sentence was similar to a successive postjudgment motion, we find what occurred here is not in conflict with *Miraglia*. The trial court entered its final order denying defendant's motion to reconsider his sentence on September 3, 2014. On October 2, 2014, after appeal No. 4-14-0782 was dismissed and the mandate from the appellate court was filed in the circuit court, the trial

court modified its denial of defendant's motion to reconsider his sentence and, instead, granted the motion and reduced defendant's sentence to 16 years' imprisonment. This modification was made within the 30 days the court retained jurisdiction to modify its final order. Defendant appealed on October 3, 2014, also within the 30-day period for the filing of an appeal from a final order. The court did not impermissibly rule on a postjudgment motion "then rule on a motion to reconsider the denial of that posttrial motion and thereby *extend its jurisdiction and the time for appeal*." (Emphasis added.) *Id.* The trial court did not extend its jurisdiction beyond the 30-day period following the denial of the postjudgment motion, nor did it extend the time for defendant to file an appeal. Accordingly, we conclude the trial court had jurisdiction where the original notice of appeal was dismissed, the mandate was filed in the circuit court, the circuit court modified its judgment, and defendant filed a new notice of appeal within the 30-day period following the denial of defendant's motion. Accordingly, we decline to vacate the court's October 2, 2014, modification of its September 3, 2014, final order.

¶ 38                                   B. Sentencing

¶ 39       Turning to the merits of this appeal, defendant asserts the trial court erred by considering, as an aggravating factor, that defendant indicated he had a firearm because that was a factor inherent in the offense. The State contends defendant has procedurally defaulted this issue by failing to raise it before the trial court. However, defendant asks this court to review this claim under the plain-error doctrine.

¶ 40       The threshold question in plain-error analysis is whether there was error at all. *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007).

> "[T]he plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* at 565, 870 N.E.2d at 410-11.

However, relief is only available under the plain-error doctrine if the defendant can "first show that a clear or obvious error occurred." *People v. Hillier*, 237 Ill. 2d 539, 545, 931 N.E.2d 1184, 1187 (2010).

¶ 41       Defendant contends the trial court improperly considered, in aggravation, that defendant indicated he had a firearm. Defendant asserts this was error because it was a factor inherent in the offense of aggravated robbery, in that defendant took property from Runge by the use of force or threatening the imminent use of force while indicating verbally or by his actions to the victim that he was armed with a firearm. We disagree.

¶ 42       The trial court, in relevant part, made the following comments at sentencing regarding the nature and circumstances of the offense:

> "He pointed the gun at her forehead. She believed it was a real gun. The weapons were never recovered, although the conversation references to the weapons in the notes certainly make it sound like they existed, whatever they were, real or not, and in this case since he pled guilty to aggravated robbery, I will consider only that he acted like he had a weapon. But it for all purposes appeared real to the victims. And this gun was

literally pointed at the forehead first of the fifteen year old and then at Mrs. Runge while she was trying to go back to the bathroom to check on her granddaughter and call on a different phone for help."

The court also said, "He did threaten—his conduct did threaten violence. Well, that's inherent in the charge. The fact that it was visited upon the victims in their own home is not, and that's a factor in aggravation."

¶ 43   The court may consider "the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant." (Internal quotation marks omitted.) *People v. Saldivar*, 113 Ill. 2d 256, 268-69, 497 N.E.2d 1138, 1143 (1986). "Certain criminal conduct may warrant a harsher penalty than other conduct, even though both are technically punishable under the same statute." *Id.* at 269, 497 N.E.2d at 1143. Consequently, the degree of harm caused to the victim may be taken into account in determining the length of a particular sentence. *Id.*

¶ 44   Here, the trial court considered the degree of harm caused by the fact the offense occurred within the victims' home—a place where one's feeling of safety and security is paramount—and the terror the victims experienced at having what they believed to be a firearm pointed at them, including the fact the gun was pointed directly at the 15-year-old victim's forehead. The court specifically noted the threat of violence was inherent in the offense and emphasized its consideration of factors in aggravation related to this event occurring in the home and the terror felt by the victims. Additionally, the court considered defendant's obvious lack of remorse, failure to take advantage of previous opportunities for rehabilitation, and the likelihood defendant would reoffend based on his attitude and embrace of a gang lifestyle. Accordingly, we conclude the court properly considered the nature and circumstances of the offense and did not err by improperly considering a factor inherent in the offense in considering aggravating factors. Because we find no clear or obvious error, we decline to review defendant's claim under the plain-error doctrine. *Hillier*, 237 Ill. 2d at 545, 931 N.E.2d at 1187.

¶ 45                                    III. CONCLUSION

¶ 46   For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal. 55 ILCS 5/4-2002 (West 2016).

¶ 47   Affirmed.