**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210534-U

Order filed January 24, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0534 Circuit No. 20-CF-128 |
| | ) | |
| MARQUIS JOSEPH MARRS, | ) ) | Honorable Norma Kauzlarich, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN[1] delivered the judgment of the court.
Justice Hettel concurred in the judgment. Presiding Justice Holdridge dissented.

_____

**ORDER**

¶ 1      *Held*:    The circuit court did not consider an improper aggravating factor in sentencing.

¶ 2      Defendant, Marquis Joseph Marrs, pled guilty to aggravated battery (720 ILCS 5/12-3.05(a)(1) (West 2018)) and was sentenced to six years' imprisonment. On appeal, defendant

_____

[1]Justice Brennan joined the Third District Appellate Court on December 5, 2022.

argues that the Rock Island County circuit court erred by considering an improper aggravating factor during sentencing. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Defendant was charged with criminal sexual assault (*id.* § 11-1.20(a)(1) and two counts of criminal sexual abuse (*id.* § 11-1.50(a)(1)). The court appointed a public defender to represent defendant.

¶ 5        The State amended the criminal sexual assault charge to aggravated battery (*id.* § 12-3.05(a)(1)). Defendant entered an open guilty plea on the aggravated battery charge. The State provided the following factual basis for the plea:

> "On or about August 17th, 2018, the victim in this case, [K.S.], reported that the Defendant *** was an acquaintance of hers she had met online. She agreed to help him move, went to his home, and while in the basement of his apartment or basement of the apartment the Defendant made sexual advances toward her. She indicated she was not interested as she was seeing someone at the time. The Defendant attempted to kiss her, grabbed her, pushed her down, physically turning her around and fondling her breasts.
>
> * * *
>
> *** [I]n the process of battering or grabbing onto her, the Defendant—he did forcibly penetrate her, causing pain and tearing.
>
> ***
>
> *** [K.S.] did go to the hospital."

The court accepted the plea agreement

2

¶ 6    The court ordered a presentence investigation report (PSI). The PSI enumerated defendant's prior criminal history which included one sex-related juvenile adjudication and three sex-related convictions. The PSI contained a letter written by defendant.

¶ 7    At sentencing the State offered K.S.'s victim impact statement as evidence in aggravation. K.S.'s victim impact statement detailed mental and physical problems she continued to suffer because of defendant's actions. Regarding psychological trauma, she explained how she continued to suffer flashbacks, anxiety attacks, relationship issues and sexual dysfunction. These resulted in the need for ongoing psychological therapy and even a hospitalization to prevent self-harm. Regarding ongoing physical problems, she described how the vaginal tearing caused by defendant's actions causes her pain when she engaged in sexual relations. Defendant offered no evidence in mitigation and asked the court to rely on a letter he provided as his statement in allocution. The State argued for 10 years' imprisonment. Defendant argued for a term of probation.

¶ 8    In imposing sentence, the court stated:

>    "The Court has reviewed the presentence investigation report and [defendant] has an extensive history involved in the system. I too was confused about the '13 felony because I thought it was a misdemeanor, but when I went into the court file he was sent to prison on that. You can't send someone to prison on a misdemeanor. So it looks like it was actually—and it shows up in the clerk's computer as a conviction on the burglary.
>
>    Then we have the '14 CF case that was charged initially as a felony and ended up looks like pleading maybe to a misdemeanor. On both of those he was

3

placed on a period of probation and he violated the terms of the probation in both instances.

Then we have a 15-CF-137 that says sex offender communication with an internet [*sic*]. He was sentenced to three years on Count 1 in the Illinois Department of Corrections, and then Count 2 a conditional discharge. In 17-CF-350 it was unlawful failure to register as a sex offender. Some minor traffic stuff over in Iowa and here, and that brings us to today's date.

*So the Court in considering the factors in aggravation, did the Defendant's conduct cause or threaten serious harm? Yes, it did.*

Number two, did the Defendant receive compensation for committing the offense? No, he didn't.

Does the Defendant have a history of prior delinquency or criminal activity? Yes, he does.

Number four, the Defendant by the duties of his office or by his position was obliged to prevent the particular offense? No, he wasn't in any sort of position or duty to oblige to prevent any particular offense.

Did the Defendant hold public office at the time of the offense?

No, he didn't.

Did the Defendant utilize his professional reputation or position in the community to commit the offense? No, he didn't.

Is the sentence necessary to deter others? That's the State's favorite argument and I understand that, but I don't really think that probation sentences or prison sentences deter anybody from anything because yet here we are.

4

And the rest of these don't apply to [defendant]. No.

Factors in mitigation, factor number one to mitigate [defendant's] conduct does not apply because his criminal conduct did cause and threaten serious physical harm to another.

Number two, did the Defendant contemplate that his criminal conduct would cause or threaten serious physical harm? I have no idea. His letter seemed to indicate that he didn't contemplate. I don't know how somebody thinks that they are friends with benefits and they have a pregnant girlfriend and other family obligations, but I'm an old woman and I assume loyalty to your sisters, and your fiancée, and your girlfriend are worth something.

The Defendant acted under a strong provocation? No, he didn't.

There are substantial grounds tending to excuse or justify your criminal his criminal [*sic*] conduct. There is not.

The Defendant's criminal conduct was induced or facilitated by someone other than himself. It was not.

The Defendant has compensated or will compensate the victim [for] his criminal conduct. I don't know how you compensate the victim when *that person is going to have lifelong psychological scars and hurdles to overcome.*

The Defendant has no history of prior delinquency. He does.

The Defendant's criminal conduct is the result of circumstances unlikely to recur. I don't know.

I don't know because based on paper, [defendant], you have been in this same situation since 2013—even before that—with the same people, surrounded

5

by the same support system, and you have engaged in criminal activity almost consistently in the same arena, if you will. So I don't know.

The character and attitude of the Defendant indicate that he is unlikely to commit another crime. Well, you talk pretty on paper, but for somebody that's been in the system for eight years you should have more respect for your mother and your sisters because they are women. And as women and—I think [counsel] said you had a daughter, and if that's true she's female too. And so you treat women the way that you want your mama and your daughter and your sisters to be treated. And so that's just the way I was raised and, again, I'm an old lady.

* * *

The Defendant is particularly likely to comply with the terms of a period of probation.

You haven't complied with your period of probation before, so on paper to me it does not look like you are willing to comply with a period of probation, [defendant]. You can tell me all kinds of things. People tell me, oh, I found God while I was in jail, but then forget about him. They forget about Jesus when they walk out the door.

The imprisonment of the Defendant would endanger his or her medical condition. There's been nothing.

And the rest of these don't apply because they are not particular to the offense here.

I have to weigh, and [counsel] is absolutely correct. The Code favors an imposition of probation. However, I have to weigh that with your history. I don't

6

know you, [defendant]. I see what I see on paper, and I have to weigh the imposition of who you are on paper, what your criminal history is, what you are willing to comply with.

Let me see. You are 24-year-old; is that correct? Excuse me, 25. 25 years old. In that short period of time—you are really young. It will take a long time to catch up to the 110 years of my age. And my mother used to tell me, especially in Spanish: Tell me who you hang with and I'll tell you who you are.

And this is who I see that you are. You have a disrespect for women. And you bring up—I've got all these wonderful letters of support for you and I know that your family loves you. You have that support system.

But they send all those letters to me, and you don't stop to think about any of those people—at least you didn't before—to engage in whatever those prior convictions are. You didn't stop to think when you engaged in this behavior about those people. I'll exclude your fiancée because she evidently wasn't part of your life at that time, but your mom was, your sisters were, your cousins were. All the people that sent letters for you, that they depend on you. If that were true, you [would not have] time to be running around doing all this other stuff for the last eight years, which frightened me because you are only 25 years old. You are a young man.

So I have to weigh the possible danger that you are to the community versus your ability to comply with probation orders, and on paper you are not a probation candidate. You have never followed through with it." (Emphases added.)

The court sentenced defendant to six years' imprisonment.

¶ 9     Defendant filed a motion to reconsider sentence which the court denied. Defendant appealed. We granted defendant's unopposed motion for summary remand to the circuit court for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). *People v. Marrs*, No. 3-21-0191 (2021) (unpublished minute order).

¶ 10     On remand, defendant filed an amended motion to reconsider sentence. Defendant then filed a second amended motion to reconsider sentence. The court denied the motion. Defendant appeals.

¶ 11                                           II. ANALYSIS

¶ 12     Defendant argues that the court improperly considered a factor inherent in the offense of aggravated battery—bodily harm—as an aggravating factor in sentencing. See 720 ILCS 5/12-3.05(a)(1) (West 2018) ("A person commits aggravated battery when, in committing a battery, other than by the discharge of a firearm, he or she knowingly *** [c]auses great bodily harm or permanent disability or disfigurement." (Emphasis added.)); 730 ILCS 5/5-5-3.2(a)(1) (West 2018) (providing that whether "the defendant's conduct *caused or threatened serious harm*" (emphasis added) "shall be accorded weight in favor of imposing a term of imprisonment or may be considered by the court as reasons to impose a more severe sentence"). In support, defendant points to the trial court's statement regarding the first statutory factor in aggravation, "did the Defendant's conduct cause or threaten serious harm? Yes, it did." 730 ILCS 5/5-5-3.2(a)(1).

¶ 13     "Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill. 2d 1, 11 (2004). "Such dual use of a single factor is often referred to as a 'double enhancement.' " *Id.* at 12 (quoting *People v. Gonzalez*, 151 Ill. 2d 79, 85 (1992)). "This rule is

8

not meant to apply rigidly because public policy dictates that a sentence be varied in accordance with the circumstances of the offense." *People v. Sanders*, 2016 IL App (3d) 130511, ¶ 13. As such, the " ' "nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant" ' " may be considered in sentencing a defendant. *People v. Saldivar*, 113 Ill. 2d 256, 268-69 (1986) (quoting *People v. Hunter*, 101 Ill. App. 3d 692, 694 (1981), quoting *People v. Tolliver*, 98 Ill. App. 3d 116, 117-18 (1981)). "A court is not required to refrain from any mention of sentencing factors that constitute elements of the offense." *People v. Sherman*, 2020 IL App (1st) 172162, ¶ 52.

¶ 14        In determining whether the court based the sentence on an improper factor, "a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Dowding*, 388 Ill. App. 3d 936, 943 (2009). When a court has considered an improper factor "[r]emand is unnecessary where a reviewing court can determine from the record that the trial court placed insignificant weight upon the improper aggravating factor." *Sanders*, 2016 IL App (3d) 130511, ¶ 13. Whether the court relied on an improper factor in imposing a sentence is a question of law we review *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8.

¶ 15        Here we observe that the trial court never referenced the physical harm caused by defendant or any of the elements of the offense when it addressed the statutory factors in aggravation. When considering the first statutory aggravating factor, the court asked whether defendant's conduct caused or threatened "serious harm," and answered in the affirmative. In doing so, the trial court did not explicitly indicate what harm it was referencing. As noted earlier, K.S.'s victim impact statement detailed how defendant's aggravated battery resulted in serious psychological symptoms requiring ongoing psychological treatment and even her

9

hospitalization to avoid self-harm. Indeed, later in its ruling the trial court noted the "lifelong psychological scars and hurdles" the victim would have to overcome. When determining whether the defendant's conduct caused or threatened "serious harm," the sentencing court is permitted to consider both physical and psychological harm. See, *e.g.*, *People v. Bunning,* 2018 Il App (5th) 150114, ¶ 9 (serious harm includes psychological harm).

¶ 16 Assuming, *arguendo*, that the court was also referencing the bodily harm caused by defendant in referencing "serious harm," the record clearly shows that the court gave it little, if any, significance. The court did not otherwise mention that defendant's conduct caused bodily harm, instead focusing on defendant's criminal history, his lack of potential for rehabilitation, and the need to protect the community from his conduct. For this reason, defendant's reliance on *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 18, is unavailing. (passing reference to bodily harm significant where the trial court made emphatic comments in reciting its consideration of improper factor).

¶ 17                                    III. CONCLUSION

¶ 18 The judgment of the circuit court of Rock Island County is affirmed.

¶ 19 Affirmed.

¶ 20 PRESIDING JUSTICE HOLDRIDGE, dissenting:

¶ 21 I respectfully dissent from the majority's decision. Instead, I would find that the court improperly considered a factor inherent in the offense—bodily harm—as an improper factor in aggravation, which was more than just a passing comment. The court specifically stated that it was considering bodily harm as a factor in aggravation. The court then relied on the improper factor when it considered the mitigating factors, stating that the defendant's "criminal conduct did cause and threaten serious physical harm to another." See 730 ILCS 5/5-5-3.1(a)(1) (West

10

2018). The majority postulates that the court was considering the psychological harm to the victim, not the bodily harm inherent in the offense. The record before us does not support such speculation. Because the court's consideration of the improper factor was not trivial, I would remand the case for resentencing. See *Sanders*, 2016 IL App (3d) 130511, ¶ 13.