NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 250517-U

NO. 4-25-0517

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 19, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| JENNIFER M. HALL, | ) | No. 23CF49 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Christopher R. Doscotch |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Zenoff and DeArmond concurred in the judgment.

**ORDER**

¶ 1   *Held*: The appellate court affirmed, finding the trial court did not improperly consider a factor inherent in the offense in aggravation at sentencing, and defendant's 50-month prison sentence was not excessive.

¶ 2   Defendant, Jennifer M. Hall, pleaded guilty to permitting the sexual abuse of a child (720 ILCS 5/11-9.1A(a) (West 2016)) and endangering the life or health of a child (*id.* § 12C-5(a)). The trial court sentenced her to 50 months' imprisonment on the charge of permitting the sexual abuse of a child.

¶ 3   On appeal, defendant argues her 50-month sentence was improper because (1) the trial court improperly considered a factor inherent in the offense in aggravation and (2) the sentence was excessive. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5   In February 2023, the State charged defendant with permitting the sexual abuse of

a child (*id.* § 11-9.1A(a)), endangering the life or health of a child (*id.* § 12C-5(a)), and criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2020)) in connection with the sexual abuse of defendant's daughter, O.R. (born in 2007) by Alexander Hackney, defendant's long-term boyfriend. Hackney admitted to engaging in sexual acts with O.R. but alleged he did so in his sleep. In April 2024, defendant entered an open guilty plea to the charges of permitting the sexual abuse of a child and endangering the life or health of a child. The State dismissed the charge of criminal sexual assault.

¶ 6        For the factual basis for the plea, the State advised the trial court that, on December 8, 2022, defendant reported to Officer Danielle Keen of the Pekin Police Department that Hackney had sexually abused O.R. Defendant told Keen she and Hackney had been in a romantic relationship for 15 years. Defendant had three children from a previous relationship, including O.R., and five children with Hackney. Defendant told Keen she knew about O.R.'s allegations of sexual abuse and assault against Hackney dating back to when O.R. was eight and nine years old.

¶ 7        Defendant told Keen she had walked into her bedroom one night when O.R. was between eight and nine years old and witnessed Hackney in bed naked with O.R. When she entered, Hackney ran out of the room naked, and defendant saw Hackney ejaculating while leaving the room. Defendant then found O.R. in the bed with no pants or underwear on. O.R. told defendant that Hackney was poking her private areas with his " 'thing.' " Defendant confronted Hackney, and he admitted to the sexual act but said he thought O.R. was defendant and did not realize it was O.R. until defendant entered the room.

¶ 8        Defendant also told Keen about an incident when O.R. was approximately 12 years old. She advised Keen O.R. had woken up from sleeping appearing visibly upset and told defendant she wanted Hackney to stop touching her. O.R. told defendant that Hackney had licked her and

touched her breasts. Defendant said Hackney confessed he told O.R. to take her bra off but stated it was for her comfort. Hackney told defendant "he must have fallen asleep again."

¶ 9 O.R. was interviewed and disclosed numerous occasions of sexual abuse by Hackney. She stated the abuse started when she was approximately eight years old. O.R. stated, when she was around eight years old, she had fallen asleep in defendant and Hackney's bed and Hackney got into the bed, took O.R.'s pants and underwear off, began touching her, and tried to stick his penis into her vagina. However, Hackney was unsuccessful because defendant walked in on them. O.R. also told the interviewer about an incident that occurred around Christmas of 2020 in which Hackney took off O.R.'s pants and rubbed his penis against her vagina. O.R. said she left the room and immediately told defendant what had happened to her. O.R. stated defendant gave Hackney the "benefit of the doubt." O.R. also explained to the interviewer that Hackney would "ask her to do stuff with him" when she wanted to play video games.

¶ 10 After O.R.'s interview, Detective Allison Palmer of the Pekin Police Department had several conversations with defendant about the investigation. Defendant admitted to Palmer that O.R. had made several disclosures to her about sexual abuse in the home, she had walked in on Hackney naked in bed with O.R., and she had never reported the abuse to anyone. Defendant also told Palmer that after one of the disclosures O.R. had made, she confronted Hackney. Defendant then "decided to remove [*sic*] O.R.'s bedroom" to see if the sexual abuse continued.

¶ 11 The trial court asked defense counsel if the factual basis was consistent with the discovery. Counsel stated he anticipated contradicting some of what was stated in the factual basis at the sentencing hearing but acknowledged, even with the parts he would seek to contradict, there was still a sufficient basis for defendant to be found guilty. The court accepted the plea.

¶ 12 The presentence investigation report (PSI) showed defendant had a criminal history

that included convictions for battery, domestic battery, a "Bad Check" offense, reckless driving, driving on a suspended license, operating an uninsured vehicle, and other traffic offenses. She had also previously violated conditions of probation. The PSI reported defendant had various mental health issues, including generalized anxiety disorder, posttraumatic stress disorder with dissociative symptoms, avoidant personality disorder, and cannabis use disorder. Defendant had attempted suicide five times in her life, with the most recent attempt in 2022.

¶ 13       Defendant reported she had previously confronted Hackney about sexual abuse of O.R., but Hackney said he had a sleep disorder and claimed he performed the sexual acts in his sleep. Defendant said Hackney had previously engaged in sexual behavior with her in his sleep. Defendant reported she found a disorder that matched the symptoms Hackney described and she wanted to get him treatment for the disorder. Defendant said she had not been aware there were multiple incidents of sexual abuse until after O.R. was interviewed.

¶ 14       Defendant stated Hackney had previously put a tracking device on her phone and had threatened her with guns. Defendant told the investigator she underreacted to knowledge of Hackney's offenses against O.R. and she did not know she had enough proof to "lock him away and keep him gone." She also reported she was afraid of what Hackney might do if no action was taken by the State following her report, stating he was violent and used guns for control.

¶ 15       Defendant admitted she chose to plead guilty because she felt responsible for not acting sooner to protect her family. Defendant had completed domestic violence counseling while on pretrial release. The investigator reported he had some concerns with defendant's truthfulness and level of accountability, noting instances in which defendant made comments minimizing her past behavior in various circumstances.

¶ 16       The PSI also included a psychological assessment. In the assessment, defendant

discussed a report of sexual abuse against her father as a child. Defendant stated she had accused her father of sexual assault but then later recanted the allegation and was labeled as a liar by her family. At the time of the assessment, defendant could not remember what actually occurred, but she was sure something inappropriate happened with her father when she was a child.

¶ 17 Attached to the PSI was a letter from O.R. stating that she felt guilty because Hackney had told her she would lose her family if she reported the sexual abuse and if her mother went to prison, this would occur. O.R. also wrote she had observed Hackney physically abuse defendant. O.R. expressed love for defendant and asked the trial court to not send defendant to prison. Also attached to the PSI was a letter from defendant's mother, alleging Hackney abused defendant. The PSI stated defendant was an appropriate candidate for community-based supervision.

¶ 18 At the sentencing hearing, Palmer testified, during several interviews, defendant disclosed knowledge O.R. was being sexually abused by Hackney for years before filing a police report. Defendant told Palmer that Hackney had said he performed the acts in his sleep. Defendant reported to Palmer that, after O.R. told her about a second instance of sexual abuse, she moved O.R.'s bedroom to another level in the house to see if the abuse would stop. Palmer identified a video from a security camera inside defendant's home in which defendant shoved Hackney up against a wall and head butted him in December 2022. The record indicates this altercation occurred when O.R. reported the instance of abuse, which led to defendant reporting the abuse to the police.

¶ 19 Palmer testified, around 1993, defendant reported to police her father would tie her up and she was sexually assaulted by 50 or 60 men. Those allegations were investigated and no charges were pursued.

¶ 20   Defendant's son, M.R., testified he observed Hackney regularly engage in violent behavior against defendant. Hackney also was violent toward M.R. on almost a daily basis.

¶ 21   Defendant's sister testified when she and defendant were children, they were both drugged and sexually abused by their father. The abuse was investigated, but nothing ever happened to their father, and they lost contact with family members because of the investigation.

¶ 22   Defendant made a statement in allocution, in which she apologized to O.R. and expressed remorse. Defendant explained she allowed her childhood traumas to cloud her judgment and she had wanted to avoid O.R. having to go through the process of an examination similar to what she had gone through. She said she did not comprehend she had enough evidence "to make a solid arrest" of Hackney. Defendant described various instances of domestic abuse and also apologized to her other children and to the trial court. Defendant said she accepted responsibility and had been engaged in therapy.

¶ 23   After defendant's statement in allocution, the trial court told defendant, "[I]f I remember correctly now, there's more things to do than just call the police. You move[d] the bedroom." The court then stated, "You can leave. You don't need the police to leave even if you're not gonna report it, you know. Obviously, if you'd taken some efforts like that, rather than the house, that might mean a little bit—it might have some context for that, you know."

¶ 24   During argument, defense counsel argued defendant finally had snapped in December 2022 and confronted Hackney to protect O.R. The trial court interrupted and noted O.R. forced the issue by telling defendant Hackney had been doing bad things.

¶ 25   The State requested a sentence of at least five years' imprisonment. Defendant asked for a sentence of probation.

¶ 26   The trial court stated it had considered the PSI, the evidence presented, defendant's

statement in allocution, the arguments of counsel, and all of the statutory and nonstatutory factors in aggravation and mitigation. The court explained it had "due regard for the seriousness of the offense with the objective of restoring the Defendant to useful citizenship." The court also noted there was a presumption of probation but stated that rehabilitative potential was not entitled to greater weight in mitigation than the seriousness of the offence. The court maintained, "[T]his is an extremely serious offense obviously."

¶ 27    The trial court then discussed various mitigating and aggravating factors and noted three incidents of sexual abuse of O.R. in approximately 2016, 2020, and 2021. The court rejected the possibility Hackney may have been sleeping during the offenses as an excuse for defendant to not report the sexual abuse sooner.

¶ 28    During its comments regarding sentencing, the trial court referenced the need to protect children and noted the failure to protect O.R. caused trauma. Before doing so, the court identified the statutory aggravating factor that the defendant's conduct caused or threatened serious harm. The court stated, "I don't think it's inherent in the offense, and that is the case here." The court acknowledged the letter from O.R. and stated, "[S]he's telling me don't punish you, I didn't want this to happen. Well, if you had left or done something a lot earlier, we wouldn't be where we're at, and the risk and damage would have been minimized." The court also stated, "And these are the three events that I know of because they talked about abuse generally, and it's over seven years, and how that's gonna turn out for her, I don't know." The court further stated, "[I]t's extremely a difficult situation because she's saying don't punish you, it's been punishment enough, but sometimes just like a parent, when your kids are telling you something, you also have to do what is appropriate also even if that's not what they want." The court later stated, "It was seven or six years. Essentially six, seven years, and moving the bedroom shows that you know something

was not right, and instead of moving the bedroom, sometimes you've got to bite the bullet. You've got to move or get out." The court added, "The police isn't the only answer, and we have to know that on a basic human level to know that you cannot stand by while your—that is—while that is going on."

¶ 29    The trial court found defendant took some responsibility in her statement in allocution but still also focused a lot on Hackney's actions. The court also stated it did not know how much it could read into defendant's past history of being a victim of abuse.

¶ 30    Ultimately, the trial court described the case as "extremely, extremely difficult," because of the mitigating factors but also because of the seriousness of this offense. The court then told defendant,

> "So the Court's explained its analysis of the sentencing in this case, the seriousness of this offense, the comments on your history and character. I also take into note that Probation has found that you'd be a candidate for high risk probation as well, and I take that [in]to account as well.
>
> However, considering that, I would find probation would deprecate the seriousness of the conduct and would be inconsistent with the ends of justice ."

¶ 31    The trial court sentenced defendant to 50 months' imprisonment and stated, "[T]he reason it's not more is for the reasons I stated there argued by [defense counsel] and contained in the [PSI] and the mitigating factors, considering the seriousness of it." The court also noted the sentence was "darn near the minimum for the Department of Corrections."

¶ 32    Defendant filed a motion to reconsider her sentence, arguing, in part, the trial court failed to give sufficient weight to factors in mitigation. The court denied the motion. Defendant appealed, and this court remanded for compliance with Illinois Supreme Court Rule 604(d) (eff.

Apr. 15, 2024).

¶ 33　　　　On remand, defense counsel filed an amended motion to reconsider her sentence, again alleging, in part, the trial court failed to give proper weight to factors in mitigation. Defense counsel did not allege the court improperly considered a factor inherent in the offense in aggravation.

¶ 34　　　　At the hearing on the motion, the trial court stated it considered the factors in mitigation and noted defendant had gotten counseling. The court stated, "That's why the sentence wasn't worse to be honest with you." The court then stated, "If it was a one-time only deal, might be a different situation," but it noted "this went on over seven years where there's opportunity, and sometimes you have to be a parent." The court also noted the PSI reported a belief defendant minimalized culpability. The court rejected an argument defendant's past as a victim of abuse justified a sentence of probation. Accordingly, the court denied the motion.

¶ 35　　　　This appeal followed.

¶ 36　　　　　　　　　　　　　II. ANALYSIS

¶ 37　　　　On appeal, defendant argues her 50-month sentence for permitting the sexual abuse of child was improper because (1) the trial court improperly considered a factor inherent in the offense in aggravation and (2) the sentence was excessive.

¶ 38　　　　　　　　A. Consideration of a Factor Inherent in the Offense

¶ 39　　　　Defendant contends the trial court improperly considered her failure to protect O.R. or intervene sooner to stop the abuse as a factor in aggravation that was inherent in the offense of permitting the sexual abuse of a child. She argues doing so was an improper double enhancement of the sentence.

¶ 40　　　　Defendant recognizes her counsel failed to raise the matter in a posttrial motion but

argues counsel rendered ineffective assistance by failing to do so. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Thus, here, counsel forfeited the issue by failing to raise it.

¶ 41 "Claims of ineffective assistance of counsel are governed by the standard set forth in [*Strickland v. Washington*, 466 U.S. 668 (1984)]." *People v. Cathey*, 2012 IL 111746, ¶ 23. "To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Petrenko*, 237 Ill. 2d 490, 496 (2010). A defendant must satisfy both prongs of the *Strickland* standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel. *People v. Clendenin*, 238 Ill. 2d 302, 317-18 (2010). When addressing a claim of ineffective assistance of counsel, appellate courts first consider whether the defendant has established a clear or obvious error. Absent a clear or obvious error, a theory of ineffective assistance does not afford the defendant any relief. *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 78.

¶ 42 Generally, the trial court has broad discretion in fashioning an appropriate sentence in criminal cases. *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 64. However, the question of whether a court relied on an improper factor at sentencing is a question of law that we review *de novo*. *Id.* at ¶ 65. "[A] trial judge may not consider an improper factor in aggravation when sentencing a defendant because such consideration clearly affects that defendant's fundamental right to liberty." *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18.

¶ 43 " 'A double enhancement occurs when (1) a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence *** or (2) the same factor is used

twice to elevate the severity of the offense itself.' " *Hibbler*, 2019 IL App (4th) 160897, ¶ 66. "There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, and a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL App (4th) 110720, ¶ 22. The defendant bears the burden to affirmatively establish the sentence imposed was based on an improper factor. *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 103. A sentence will not be reversed unless it is evident the trial court relied upon an improper factor. *Id.*

¶ 44        "A person responsible for a child's welfare commits permitting sexual abuse of a child if the person has actual knowledge of and permits an act of sexual abuse upon the child." 720 ILCS 5/11-9.1A(a) (West 2016). Here, defendant points to various statements by the trial court referring to her failure to protect O.R. or her failure to remove O.R. from the situation earlier to argue the court was using her charged act of permitting the sexual abuse of O.R. as a factor in aggravation. We disagree.

¶ 45        When announcing its sentencing decision, the trial court is not required to refrain from any mention of the factors that constitute elements of an offense, and the mere reference to the existence of such a factor is not reversible error. *People v. Brown*, 2018 IL App (1st) 160924, ¶ 22. "Sentencing hearings do not occur in a vacuum, and the duty to impose a fair sentence entails an explanation of the court's reasoning in the context of the offenses of which a defendant has been convicted." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 15. Although elements inherent in the offense are off-limits as aggravating factors, the sentencing judge cannot be expected to ignore factors relevant to a sentencing decision. See *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986). "While a trial court may not consider a factor inherent in the offense in aggravation, it is appropriate to consider the degree and gravity of the defendant's conduct." *People v. Jeffers*, 2022

IL App (2d) 210236, ¶ 25. Indeed, the seriousness of the offense is the most important factor in determining an appropriate sentence. *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123. It is also appropriate for a court to consider in aggravation that the defendant's conduct caused or threatened serious harm. 730 ILCS 5/5-5-3.2(a)(1) (West 2024).

¶ 46    Here, defendant pleaded guilty to one count of permitting sexual abuse of a child, and the trial court referenced three specific instances of abuse. But in commenting on defendant's failure to protect O.R. or to stop the acts from occurring, the court referenced the broader time period of abuse occurring over seven years and specifically stated it was considering that defendant's conduct caused or threatened serious harm. The court further specifically noted that was not a factor inherent in the offense. In the full context of the sentencing hearing, the court's comments addressed the evidence showing a long-term pattern of behavior in which defendant allowed O.R. to be harmed, aside from the specific acts alleged in the offense, which in turn illustrated the extent of the harm and the seriousness of the offense. The court could properly consider those factors. Thus, defendant has not shown a clear error to support a finding of ineffective assistance of counsel for not objecting at the sentencing hearing or otherwise failing to raise the issue.

¶ 47                          B. Excessive Sentence

¶ 48    Defendant also contends the trial court abused its discretion in imposing the 50-month sentence by failing to consider or properly weigh factors in mitigation, resulting in a sentence that was disproportionate to the nature and circumstances of the offense.

¶ 49    "The legislature sets forth by statute the range of permissible sentences for each class of criminal offense." *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A reviewing court affords great deference to a trial court's sentencing judgment because, "having observed the defendant and

the proceedings, [it] is in a far better position to consider such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, and habits than a reviewing court, which must rely on a 'cold' record." *People v. Little*, 2011 IL App (4th) 090787, ¶ 24. A sentence that falls within the applicable statutory limits is reviewed for an abuse of discretion. *People v. Price*, 2011 IL App (4th) 100311, ¶ 36. "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20 (quoting *Fern*, 189 Ill. 2d at 54).

¶ 50　　　　Here, defendant challenges her sentence for permitting the sexual abuse of a child, a Class 1 felony. 720 ILCS 5/11-9.1A(a), (g) (West 2016). On that charge, defendant was subject to a term of not less than 4 years and not more than 15 years in prison. 730 ILCS 5/5-4.5-30 (West 2022). Because defendant's sentence was within the permissible range, we presume the sentence was proper and we review it for an abuse of discretion. See *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104.

¶ 51　　　　Here, the trial court did not abuse its discretion in imposing a 50-month term of imprisonment. While defendant contends the sentence is disproportionate to the circumstances underlying the offense and points to various statements by the court to argue it failed to consider or give appropriate weight to various mitigating factors, the court expressly discussed the mitigating factors and weighed them against the seriousness of the offense. As the court itself noted, it was not required to afford greater weight to mitigating factors than to the severity of the offense. See *People v. Alexander*, 239 Ill. 2d 205, 214 (2010). Nor does the presence of mitigating factors require a minimum sentence. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. "Where mitigating evidence is presented to the trial court, it is presumed, absent some indication to the

contrary, other than the sentence itself, that the court considered it." *Sauseda*, 2016 IL App (1st) 140134, ¶ 19.

¶ 52    As previously discussed, the seriousness of the offense is the most important factor in determining an appropriate sentence. *Harmon*, 2015 IL App (1st) 122345, ¶ 123. The trial court specifically found the offense was particularly serious and noted the events underlying it had taken place over a long period of time, causing serious harm. Despite that, the court sentenced defendant to just two months over the minimum prison term. In doing so, the court specifically stated the sentence would have been greater but for the presence of mitigating factors.

¶ 53    Our review is limited to determining whether the trial court abused its discretion. Although defendant insists the court abused its discretion, her argument is essentially nothing more than a request for us to reweigh the sentencing factors, which we will not do. "A reviewing court does not reweigh the factors involved in a trial court's sentencing decision." *People v. Pippen*, 324 Ill. App. 3d 649, 653 (2001).

¶ 54    On this record, we cannot say defendant's sentence was greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. Accordingly, the trial court did not abuse its discretion in sentencing defendant to 50 months' imprisonment.

¶ 55                                    III. CONCLUSION

¶ 56    For the reasons stated, the judgment of the trial court is affirmed.

¶ 57    Affirmed.